# ANNA FAULK v. IOWA COUNTY, Appellant.

**Bridges:** LIABILITY OF COUNTY. A county chargeable with knowledge of defects in the railing on an approach to a county bridge, is liable for injuries of which the defective railing was the proximate cause

REASONABLE CARE: *Jury question.* Where a team of small horses, hitched to a light road wagon, backed the wagon about eight feet and against a defective railing on a bridge approach, which gave way, it was a question for the jury whether the wagon was backed with force enough. to have broken the railing had it been in good condition.

SAME. The frightening of a horse, and its consequent backing of a vehicle off a bridge approach, are not such unusual occurrences as to excuse reasonable precautions by the bridge authorities to provide against the accident.

CONTRIBUTORY NEGLIGENCE. A driver whose horse took fright and backed off a bridge approach was not chargeable with contributory negligence because he was driving without a whip, where it appeared that none was ordinarily used or required, and that he had no reason to anticipate the act of the horses.

EVIDENCE. In an action for personal injuries resulting from the breaking a bridge railing against which a team backed a vehicle, it was not error to admit evidence that a part of the railing near the place of the accident was missing some time before the accident occurred, to show the condition of the remaining rail and notice to defendant.

Reserving Ruling: PREJUDICE. The taking under advisement a motion to strike out testimony is without error where the ruling finally sustaining the motion is accompanied by an instruction to the jury not to regard the testimony.

Appeal: BILL OF EXCEPTIONS: *Misconduct of counsel.* It does not follow from the fact that affidavits showing remarks by attorneys in their arguments to the jury were made a part of the record on appeal by bill of exceptions, that they are competent to prove a disputed fact.

*Appeal from Johnson District Court.*—HON. M. J. WADE, Judge.

SATURDAY, OCTOBER 23, 1897.

ACTION at law to recover for personal injuries alleged to have been caused by a defective bridge. There was a trial by jury, and a verdict and judgment for the plaintiff. The defendant appeals.—*Affirmed.*

*C. E. Vance,* county attorney, and *Remley, Ney & Remley* for appellant.

*D. H. Wilson* and *Slater & Hunt* for appellee.

ROBINSON, J.—On the twentieth day of October, 1894, the plaintiff, two other women, and a man named Sullivan, left the town of Marengo, in a northerly direction, for the town of Watkins. They were riding in a two-seated road wagon drawn by two horses, and Sullivan was driving. When but a short distance from Marengo, they were overtaken and passed by several men who were in a wagon drawn by two horses. The men seemed to be somewhat intoxicated. A few minutes later they drove onto a bridge which crosses the Iowa river, and there stopped for a short time. They then drove over the main part of the bridge, and onto an approach of trestlework one thousand feet in length. When they had proceeded on the approach a distance of three or four rods, they met a team going southward, and stopped, and began to talk with its driver, who also stopped his team. The two teams then so occupied the bridge that Sullivan could not pass them. When the team going northward passed Sullivan, he slackened the speed of his team, but drove over the main part of the bridge, and went within a short distance of the two teams which were obstructing the bridge. The north team was restless, and trying to back, and, to avoid trouble from it, and thinking to avoid the obstruction and delay, and perhaps also because his horses were restless, Sullivan commenced to turn his team towards the northeast, for the purpose of driving down

an inclined way which led from a platform on the east side of the approach at that point northward to the bottom land below. The way appears to have been intended for stock, but seems to have been practicable for horses and wagons. The witnesses do not agree in regard to the distance Sullivan's horses had proceeded in the direction of the inclined way, some stating that they were merely turned in that direction, while others say that they were on the incline. The plaintiff objected to going down the incline, stating that it was closed. At that moment the team commenced to back, the wagon was forced against the west rail of the trestle, which was broken down, and the wagon, its occupants, and the horses were precipitated over the side of the approach to the ground below, a distance of about nine feet. When the plaintiff was found, she was under one of the horses, and had received serious injuries, for which she seeks to recover. She claims that the accident was caused by a defective and insufficient railing, and that the defendant was negligent in not making it safe. The defendant denies all negligence on its part, and avers that, if the plaintiff sustained any injuries as alleged, she contributed to them by her own negligence. The verdict was for three thousand dollars, and judgment was rendered in favor of the plaintiff for that sum, with accrued interest and costs.

I. The railing in question had been in existence, at the time of the accident, about thirteen years. It was about three and one-half feet high, and consisted of posts four by four inches in size, bolted to the outside of the outside joists or stringers of the approach; a top cap or railing of the same size, cut half way through over the tops of the posts to which it was spiked; a hub board two by four inches in size; and a snow board, twelve inches wide, nailed to the inside of the posts. There is some conflict in the evidence in regard to the

condition of the railing, but the jury was fully warranted in finding that its timbers and the stringers to which the posts were attached were much decayed, that nails and bolts would not hold in the wood, that one of the posts which was forced off was held to the stringers by a single half-inch bolt, which was without a burr or nut, and that the railing at the place of the accident was in bad condition, of little strength, and insufficient.

The approach was a part of a county bridge, and the evidence shows that the defendant was chargeable with knowledge of and is liable for the defects, if any, which existed in the railing. See *Miller v. Boone County*, 95 Iowa, 5. The appellant contends that the weakness of the railing was not the proximate cause of the accident; that the wagon in which the plaintiff was riding was backed against the railing, with such force that it would have been broken, and the accident would have happened, even though the railing had been sufficiently strong to resist all pressure which reasonable care should have anticipated; and that the accident was due to the viciousness and bad conduct of the horses which Sullivan was driving. We think the jury was justified in finding that this claim was not well founded. The horses were small, each weighing but about six hundred pounds. They had been used in the butcher business about four years, and had been accustomed to back into the slaughter house used in the business, and would do so quickly, and would sometimes back in other places; but it is not shown that they backed with much force, nor that the practice was a dangerous one. They were active and spirited, but are not shown to have been vicious nor unmanageable, under ordinary circumstances. When they commenced to back on the bridge, Sullivan tried to stop them by speaking to them, and by slapping them with the reins, but without effect. The wagon was light, and was spoken of by most witnesses as a buggy. The pole had

been splintered, but was considered sufficiently strong
to use in driving about the country. The approach was
but sixteen feet in width, and the distance the wagon
was backed does not appear to have been more than
eight feet, and may have been less. · It is not shown ·
that it was backed against the railing with much force,
and we think the jury may well have found that the
force applied was not great, and that it was not suffi-
cient to break down the railing, had it been in good con-
dition. It was said in *McClain v. Incorporated Town
of Garden Grove*, 83 Iowa, 235, to be the duty of the
defendant in that case to provide for the use of the
bridge there in controversy in the usual manner, to
guard against ordinary contingencies or those which
might reasonably be apprehended, and to provide rail-
ings of sufficient height and strength to resist any
weight or pressure which would be applied under
ordinary circumstances. It is not so uncommon
for horses to become frightened on a bridge, and
back the vehicle to which they are attached, that
it can be said to be a contingency for which the corpora-
tion responsible for the bridge should not be required
to provide; and, while the corporation should not be
held responsible for the failure to provide a railing
which would successfully withstand all pressure which
could be applied by such means, yet it may well be held
liable for the failure to provide against the pressure
which the jury may rightly have found was applied in
this case. In other words, the occurrence in question
was not of such an unusual character that it was not
the duty of the defendant to provide against it. See
*Manderschid v. City of Dubuque*, 25 Iowa, 109; *Byerly
v. City of Anamosa*, 79 Iowa, 205; *Miller v. Boone
County*, 95 Iowa, 5. Much is said in regard to contrib-

utory negligence of the plaintiff or on the part of Sullivan which is alleged to be imputable to her. It is true that Sullivan did not have a whip, but it is shown that none was ordinarily used or required with the horses he was driving, and it does not appear that he had any reason to anticipate their act in backing against the railing. We think the jury was authorized to find that he acted with reasonable care and prudence, and that neither he nor the plaintiff contributed to the accident by any negligence on their part. We have examined the authorities upon which the appellant relies, but we think they are not in point, or, in view of the settled law of this state, that they should not lead us to a different conclusion.

II. A witness stated that a part of the cap or top rail eight feet in length at or near the place of the accident was missing some time before the accident occurred. The defendant asked to have that portion of the testimony stricken out, but the court denied the request. We think the testimony was proper, especially when taken with other evidence, as tending to show the condition of the railing at the place of the accident, and upon the question of notice to the defendant, of its condition. *McConnell v. City of Osage*, 80 Iowa, 297; *Munger v. City of Waterloo*, 83 Iowa, 560.

III. A witness testified that one post and a part of the railing were out at or near the place of the accident for a considerable length of time before the accident occurred, and he was then permitted to state that he had on two different occasions informed the county auditor of the defendant of the condition of the railing. The defendant objected to the testimony respecting notice to the auditor. The ruling on the objection was reserved for some time, but the objection was finally sustained, and the testimony was stricken out. The appellant complains because the ruling was not made when the objection was first stated.

It is not uncommon for courts to take questions presented to them under advisement, and we do not think any abuse of discretion in deferring the ruling in question is shown. Moreover, the court charged the jury not to consider the evidence in regard to the notice to the auditor, and prejudice could not have resulted to the defendant from the alleged error.

IV.   Other rulings on evidence are objected to and paragraphs of the charge to the jury are criticised. We have examined the objections thus made, but do not think any of them are well founded. The trial was fair, and the charge was quite favorable to the defendant.

V.   The appellant complains of remarks made by attorneys for the plaintiff in their argument to the jury. The alleged remarks are not shown by the certificate of the trial judge, but by affidavits. It appears that the affidavits were made a part of the record by bill of exception. It does not follow that, because they are of record, they are competent to prove a disputed fact. *State v. La Grange,* 99 Iowa, 10; *State v. Burton,* 103 Iowa, 28.   But it is said that the remarks in question were made in the absence of the trial judge, and hence were not within his knowledge, and could only be shown by affidavit. Conceding, for the purposes of this case, that under the circumstances stated it was competent to show the remarks of attorneys, by affidavit, counter-affidavits could also be used for the same purpose, and they were filed in this case. When the affidavits and counter-affidavits are considered together, they do not show that the attorneys for the plaintiff made any remarks which could have been prejudicial which were not authorized by the evidence in the case, or the statements of adverse attorneys. It appears that at least a part of the matters in dispute was investigated at the time by the trial judge, and that his conclusion was against the claim made by the appellant. We are

of the opinion that cause for disturbing the judgment of the district court has not been shown, and it is AFFIRMED.