MISSOURI, KANSAS & TEXAS RAILWAY COMPANY OF TEXAS v. ELLEN WILLIAMS ET AL.

No. 2023.    Decided March 9, 1910.

**1.—Master and Servant—Negligence—Question of Fact.**

Evidence considered and held sufficient to require the submission of the issue as to defendant's negligence, in a case where a locomotive engineer, looking out from the window of his cab, was killed by his head striking a crane for holding mail sacks to be caught by catcher bars from the mail coaches of trains not stopping at the station. Issue as to negligence in locating the crane too close to the track and in maintaining a defective track causing the engine to sway toward the crane are each held to be raised by the evidence. (Pp. 229, 230).

**2.—Same—Opinion of Expert—Res Ipsa Loquitur.**

If the proper location of a crane for holding mail sacks with reference to its proximity to passing trains was a question demanding the opinion of experts for its determination, the fact that an engineer in the proper discharge of his duties upon the engine was struck and killed by such structure would tend to support an inference of negligence calling for the production of such expert opinions by defendant rather than by plaintiff. (Pp. 230, 231).

**3.—Evidence—Negligence—Conditions Subsequent to Action.**

Evidence, in regard to condition of track and its relation to a structure by the side of it six months after an injury occurred, held to be made relevant by evidence that such conditions were then substantially the same as at the time of the accident. (Pp. 231, 232).

Error to the Court of Civil Appeals for the Fifth District in an appeal from Grayson County.

Williams and others sued the railway company and recovered judgment which was affirmed on appeal by defendant, who thereupon obtained writ of error.

*Coke, Miller & Coke,* and *Head, Dillard, Smith & Head,* for plaintiff in error.—The evidence was not sufficient to authorize the submission to the jury of the issue as to whether or not appellant was guilty of negligence in "erecting and maintaining, the mail crane the distance

it was from the track at the time Williams was killed." Railway v. Kizziah, 86 Texas, 81, 89; McCrary v. Railway, 89 Texas, 168; Labatt, Master and Servant, sec. 44, p. 111.

The evidence in this case was not sufficient to authorize the submission to the jury of the issue as to whether the alleged defect in the track did in fact cause the death of Williams. To find that it did it will be necessary to base a presumption upon a presumption, which is not permissible. Railway v. Thompson, 16 Texas Civ. App., 658; by the Dallas Court of Civil Appeals, well illustrates the principle. How can the presumption that the condition of the track which was found to exist in October had continued since before the accident in the preceding May be indulged over the conflicting presumption that defendant had exercised proper care in looking after the track during the interval? Rule 122 of Lawson on Presumptive Evidence, page 665, says: "In the case of conflicting presumptions the presumption of innocence is stronger than, and will prevail against, the presumption of the continuance of things generally." He cites Lockhart v. White, 18 Texas, 102; Yates v. Houston, 3 Texas, 433; and Carroll v. Carroll, 20 Texas, 740, and other authorities.

*Wolfe, Hare & Maxey,* for defendant in error.—The evidence showing that the deceased, while in the discharge of a duty required of him by his employment and while in his proper place, was struck and killed by a mail crane erected by appellant on its right of way near its track, and there being no evidence to show that at the time deceased was unnecessarily exposing himself to danger or doing any act which was not required in the proper discharge of his duties, and there being evidence showing that said mail crane might have been erected at a greater distance from the track without interfering with its proper use, it was for the jury to say whether in placing the same where it was, appellant was guilty of negligence. Railway Co. v. Stephenson, 22 Texas Civ. App., 220.

The court is never justified in taking from the jury a question of fact, except in cases where the evidence is such that there is no issue made for the jury to determine. Railway Co. v, Kline, 94 Texas, 649; Choat v. Railway Co., 90 Texas, 88; Joske v. Irvine, 91 Texas, 582; Assurance Co. v. Kemendo, 94 Texas, 372; Lee v. Railway Co., 89 Texas, 588.

Mr. Justice Williams delivered the opinion of the court.

The defendants in error (plaintiffs), who are the widow and children of R. L. Williams, recovered the judgment under review against plaintiff in error (defendant) for damages in respect of his death, which occurred while he was in the service of the defendant as locomotive engineer, in this way: As he was passing the station of Peniel in the engine-cab of a freight train, he put his head out of the side window of his cab to see to the working of the injector, which he had just put in operation to force water from the tender into the boiler, when he was struck above the temple near the top of the head by the end of one of the beams of a mail crane near the track, and was instantly killed. That he was acting in the proper discharge of his duty was

shown and is not disputed. The defendant was charged by plaintiffs with negligence (1) in locating the crane too near the track and (2) in allowing the ties in the track near it to be in such rotten condition as to allow the engine to rock and sway so as to cause the collision.

The charge of the court submitted both the issues thus made by the pleadings, leaving it to the jury to say whether or not there was negligence which caused the injury in either respect. The assignments of error assert that the evidence did not justify the submssiion of either.

With respect to the crane, the evidence shows that it was erected by defendant, for its own convenience, to hold mail sacks extended between the ends of its beams, so that they could be taken off by catcher bars reaching out from the mail coaches of moving trains without stopping them. There is evidence to the effect that all that was essential to the proper operation of this contrivance was that the mail sacks should be so near the passing train that the end of the catcher bar would extend beyond it. The distance between the end of the beam, contact with which killed Williams, and the side of the mail coaches, which is the same as that between the beam and the side of Williams' cab, and also the distance for which the catcher bar extended outward were shown, from which it appears, mathematically, that the beam might have been put further from the sides of the cars and of the cabs of the engines and still have allowed the end of the catcher bar to extend beyond the mail sack. The evidence also indicates that these catcher·bars are not of uniform length and that all the cranes are not located the same distance from the track. There is no expert or other evidence than these facts from which the question whether or not the crane was located with proper skill and care can be determined.

Concerning the condition of the track, there is evidence that the ends of some of the crossties close to the crane and on the side of the track nearest it were so rotten that the rail had sunk into some of them a quarter to a half an inch; that for twenty feet none of the spikes on the inside of the rail nearest to the crane were driven down close against the iron, and some of those on the outside of the rail were in the same condition, and those in the rotten ties stood up an inch and a half or two inches above the flange of the rail; that such condition would cause the engine to lean close to the beam of the crane; and that a witness, observing the movement of an engine by the crane, saw it rock.

The objection urged to the submission of the issues is that the evidence was insufficient to raise any inference of negligence in the location of the crane, and insufficient, also, to justify a finding that the condition of the track proximately caused Williams' death.

We have reached the conclusion that the evidence was clearly sufficient upon both points to take the case to the jury. The occurrence itself is sufficiently indicative of negligence on defendant's part to call for an explanation from it, freeing it from such an imputation. The killing of one of its employes, while in the proper performance of his duty, by contact with a structure of its own contrivance near the track, strongly indicates a lack of proper care and foresight in

the location of the structure, in view of the reasonable presumption that it could have been made consistent with the safety of employes while rendering the ordinary service. The mere adoption of such an expedient for handling the mails would imply that its proper use would not endanger employes so engaged on passing trains, and that a collision would not likely happen, when proper care is used in constructing it to make it safe.

It is urged that without evidence from persons having expert knowledge of the considerations controlling the construction and use of mail cranes, a jury could not find that the construction of that in question was not proper or even necessary to its use, since common experience would not yield information upon such a subject sufficient to form the basis of an intelligent judgment. We think the answer to this is that, if any such information could have been given to explain and excuse an occurrence carrying with it such indications as those to which we have referred, that information was in the possession of the defendant and should be expected to come from it. The facts adduced as to the position of the beam with reference to sides of passing cars tend strongly to support the inference of negligence therein naturally suggested by the manner in which Williams was killed by it, and if there was a reason hidden from the ordinary mind why this condition of things must have existed, those facts called upon the defendant to make that reason known. Galveston City R. Co. v. Hewitt, 67 Texas, 481, 482.

The same view sustains the submission of the issue as to the condition of the track. The jury were to find the cause of, and fix the responsibility for, the killing of Williams. The proximity of the crane, or the condition of the track causing an unusual swaying of the engine, or the one helping the other, might explain the occurrence and thus be found to have been the cause and to fix responsibility on the defendant.

Williams was killed in May. One Kerns made a close examination of the track opposite the crane and its surroundings on the 12th of December following, and was permitted to testify to the condition, then existing, of the cross ties and spikes substantially as we have stated it. It is contended that this and other testimony to like effect was too remote, the condition in December being no proper evidence of the condition in May. The Court of Civil Appeals in meeting this objection, set out testimony which they held to show that the condition was the same at the two dates. The evidence thus set out seemed to be to the general condition of the track at this place and that there had apparently been no change in such general condition, and not as to the existence, in May or at any other time, of the specific defects found in the track in December; and it was thought by this court, in granting the writ of error, that it did not appear that the witnesses in fact knew of and intended to testify to the previous existence of those defects, since if they claimed to have observed them, they would naturally have been called upon to state them, rather than to make the general statement referred to as a basis for the more specific testimony of Kerns. An examination of the testimony of the witness Roberts, as it is set out in full in the statement of

facts, shows, however, that he did testify to frequent observations of the cross ties and spikes from the time of the accident to December 12, when he assisted Kerns in making the examination of that date, and to the fact that the condition particularly described by Kerns as then existing had existed all the time. When the question is as to a condition existing at one time, evidence as to that at a different time may furnish no appreciable aid in determining that question. The mere length of time between that in question and that 'to which the evidence relates may not be decisive, for the reason that some conditions are ephemeral, others permanent or lasting. As to those of the first kind, evidence that they exist at one time might be none whatever that they existed at another time; while the latter kind may, by the appearances attending them, indicate with more or less certainty that they have existed long enough to include the time under investigation. The question that arises, therefore, was whether or not the evidence offered tended to show the existence of the defects in the track at the time when Williams was killed with sufficient directness and force to give any reliable help to the jury. The evidence to which we have just referred, showing that the condition was the same at the two dates, makes it unnecessary for us to determine what the decision should be without that evidence. With it, the testimony of Kerns simply showed and described with exactness and particularity a condition which the jury could have found from other evidence to have existed when Williams was killed. It was therefore admissible. It follows also that this evidence as to the sameness of the condition made admissible that as to the rocking of the engine at the later date.

We have thus disposed of the questions upon which the writ of error was granted. The other questions of law, of which alone we have jurisdiction, were correctly disposed of by the Court of Civil Appeals.

*Affirmed.*