## ENGLISH v. THOMAS.

No. 4145.   Opinion Filed May 25, 1915.

Rehearing Denied June 15, 1915.

(149 Pac. 906.)

1. **LANDLORD AND TENANT — Defective Premises — Actions Against Landlord—Admissibility of Evidence.** In an action for damages for injury alleged to have been sustained by the giving way of a defective rail surrounding a stairway platform, proof of the condition of the railing at about the time of the injury is competent, even though the most satisfactory evidence is its condition at the time of the injury, but, if such evidence is unobtainable, it is sufficient to show the condition within such a reasonable time as will, in the nature of the case, fairly tend to show the condition at the moment preceding the injury.

2. **SAME.** Evidence of the defective condition of a rail immediately adjacent to and connected with the rail which gave way causing the injury is admissible as tending to show that defendant by the exercise of ordinary care, could have known of the defect.

3. **SAME—Weight of Evidence—Invitation to Enter.** Evidence examined and held sufficient to justify the court in submitting the case to the jury on the question as to whether plaintiff at the time of injury was delivering newspapers to the tenants in defendant's building.

4. **SAME—Invitation.** Where the owner of an office building rents the rooms to numerous tenants, mostly lawyers, a majority of whom were under contract with plaintiff to deliver the Muskogee Daily Phoenix at their offices, and in compliance with such contracts of subscription such papers were by plaintiff delivered, **held:**

   (a) That under the facts in this case, plaintiff was on the premises at the express invitation of the tenants and for their common interest and mutual advantage, benefit, and convenience.

   (b) That while upon the premises under such invitation the owner owed the invitee precisely the same duty that he owed to his tenants.

   (c) That the duty as to the degree of care which the owner of said building owed to his tenants was to exercise ordinary care in the maintenance of his premises.

5.    **SAME—Invitee of Tenants—Extent of Invitation.** An invitation to enter a building for the purpose of delivering papers is broad enough to cover the reasonable use of the platform and stairway leading to the ground in the rear of said building, where such stairway has been used for that purpose for several years.

6.    **APPEAL AND ERROR—Review—Verdict.** There was evidence reasonably tending to prove that the defect in the railing was of such a nature that defendant could have known of the same by the exercise of ordinary care. This question was submitted to the jury under proper instructions, and, the jury having found this issue against defendant, the same will not be disturbed.

(Syllabus by Rittenhouse, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by Clarence F. Thomas against Albert Z. English. Judgment for the plaintiff, and defendant brings error. Affirmed.

*N. A. Gibson* and *T. L. Gibson,* for plaintiff in error.
*Galen Nichols* and *Guy F. Nelson,* for defendant in error.

Opinion by RITTENHOUSE, C. The facts disclosed by the record are: That plaintiff, Clarence F. Thomas, in April, 1906, was engaged in delivering the Muskogee Daily Phoenix, a morning newspaper published in Muskogee, Okla.; that on his route was a building situated at the corner of Main and Broadway streets, known as the English Building, the property of Albert Z. English, the defendant; that it was occupied by various tenants, principally lawyers, most of whom were subscribers to the paper delivered by plaintiff and to whose offices plaintiff under contract delivered papers each morning; there were two stairways or entrances leading up from Broadway, and one entrance and stairway at the rear of the building leading up on the north side from Main street;

that plaintiff had been delivering papers in this building for a long time, and that it was his custom to enter the building at the front stairway leading up from Broadway, make the rounds through the various offices, and leave by the rear stairway leading down to Main street; that the defendant provided a janitor for the purpose of taking care of the halls and stairways; that plaintiff had filed his resignation as carrier of said paper, but said resignation had not taken effect, and, while still under the contractual relation with the paper and the tenants of said building, he was teaching another boy the names and addresses of the subscribers thereof, and on the morning in question the boy who was learning the route accompanied plaintiff and assisted him in the delivery thereof to the tenants in said building; that as soon as the papers had been delivered plaintiff, together with his companion, stepped out on the rear platform on the north side of said building, from which a stairway descended within three or four feet of Main street; that the platform and stairway were constructed of wood, the platform being surrounded by a wooden railing made of 2x4's on wooden uprights; that there was a similar railing running from the bottom of the steps to the platform and connected with the railing around the platform, being fastened on the same post; that upon leaving the building plaintiff attempted to steady himself by taking hold of the railing around the platform, and while so doing looked around to see if his companion was coming, his weight coming in contact with the rail, which gave way, and plaintiff was thrown to the ground below and sustained serious and permanent injuries, resulting in curvature of the spine. There was evidence that the tenants of the building, their janitors, and others who had occasion to use the stairway

and platform where the injury occurred had, prior to the injury to the plaintiff, observed that the railing running from the bottom of the stairway to the top was insecure and shaky; that such railing was connected with the rail which broke causing plaintiff's injury; that the ends of the rail which gave way had rotted, and the nails holding them together were rusted off; that said platform was on the outside of the building, and was constructed about six or seven years before the injury. This action was brought to recover for injuries alleged to have been sustained by plaintiff on account of the negligence of the owner of the building in the maintenance of said platform and railing, and asking damages in the sum of $10,000, which it is alleged was caused directly and proximately by the carelessness of defendant and without fault on the part of plaintiff, and, in addition, the sum of $600 for medical attention and necessary traveling expenses.

Complaint is made: (1) That the testimony of W. J. Crump and Wm. H. Young, relative to the condition of the railing running from the ground to the top of the platform, was incompetent, in that it attempted to prove the condition of the premises without any definite testimony as to the time; (2) that a part of the testimony of witness Young was a conclusion; and (3) that evidence of the defective condition of the railing leading from the street to the platform was incompetent for the purpose of proving that the railing around the platform was defective.

Proof of the condition of the railing at about the time of the injury is competent, even though the most satisfactory evidence of the condition of the railing is at the moment immediately preceding the accident, but, if such evidence is unobtainable, it is sufficient to show

the condition within such a reasonable time as will, in the nature of the case, fairly tend to show its condition at the moment preceding the accident. *Arndt v. Bourke,* 120 Mich. 263, 79 N. W. 190; *M., K. & T. Ry. Co. v. Williams,* 103 Tex. 228, 125 S. W. 881; *Joyce v. Black,* 226 Pa. 408, 75 Atl. 602, 27 L. R. A. (N. S.) 863; *J. & S. E. Ry. Co. v. Southworth,* 135 Ill. 250, 25 N. E. 1093; *City of Bloomington v. Osterle,* 139 Ill. 120, 28 N. E. 1068; *Hall v. City of Austin,* 73 Minn. 134, 75 N. W. 1121; *Stewart et al. v. Evarts,* 76 Wis. 35, 44 N. W. 1092, 20 Am. St. Rep. 17.

Evidence as to the defective condition of the railing leading from the ground to the platform was admissible as tending to show that the defendant had knowledge of the defective condition of the entire railing, or could have known of such defective condition by the exercise of ordinary care. It was said in *Faulk v. Iowa County,* 103 Iowa, 442, 72 N. W. 757:

"A witness stated that a part of the cap or top rail eight feet in length at or near the place of the accident was missing some time before the accident occurred. The defendant asked to have that portion of the testimony stricken out, but the court denied the request. We think the testimony was proper, especially when taken with other evidence, as tending to show the condition of the railing at the place of the accident, and upon the question of notice to the defendant, of its condition. *McConnell v. City of Osage,* 80 Iowa, 297, 45 N. W. 550 [8 L. R. A. 778]; *Munger v. City of Waterloo,* 83 Iowa, 560, 49 N. W. 1028."

Complaint is made that the testimony of witness Young was a conclusion and invaded the province of the jury, in that he was allowed to testify as follows:

"Q. Would it be possible to move one of those rails without moving the other; if you should shake one of them would it not have to shake the other? A. Well, I should think to shake one it would shake both; they were joined together; it looked to me like fastened on a little post."

The witness had seen the stairway, knew that the railing around the platform and the railing leading from the ground to the platform were joined, and that one was loose, and with that knowledge testified that the shaking of one railing would, in his opinion, necessarily shake the other. This testimony was evidently given as a result of his personal knowledge and observation. We do not think that this testimony was prejudicial.

Complaint is made to the giving of instructions Nos. 4 and 5. Instruction No. 4 fairly instructs the jury on the meaning of ordinary care, as defined by section 2939, Comp. Laws of 1909. Under instruction No. 5, the court instructed the jury as follows:

"The court further instructs you that, if you believe from the evidence that on or about the 6th day of April, 1906, the plaintiff was delivering newspapers to certain tenants of defendant in said English Building upon subscription therefor by any such tenant, that plaintiff then and thereby became an invitee of defendant as to the use of the halls, stairways, and stairway platform, and that, as such invitee, as a matter of law, the defendant owed plaintiff the duty to keep said stairway platform and railing around the same in a reasonably safe condition for a reasonable use thereof by plaintiff, and if you further believe from the evidence that on or about the date mentioned plaintiff, while so engaged and while in the exercise of due care, went out upon the stairway platform in question and took hold of or leaned against the railing around the same in a reasonable use thereof for the purposes for which such railing was intended and for the

purpose of steadying himself, and if you further believe from the evidence that when plaintiff so caught hold of or leaned against said railing that the same gave way and caused plaintiff to fall and plaintiff was thereby injured, and that the giving way of such railing was due to any defect in the condition of the same, and that such defect, if any, was known to the defendant or his agent or employee, or by the exercise of ordinary care should have been so known, the defendant would be liable to plaintiff in damages, and your verdict should be for the plaintiff."

Plaintiff in error bases his objections to this instruction upon four grounds: (1) Because there was no evidence that plaintiff at the time of his injury was delivering newspapers to the tenants in defendant's building; (2) because, under the facts as shown by the undisputed evidence in this case, plaintiff was a licensee, and not an invitee, in defendant's building at the time he was hurt; (3) that knowledge on the part of defendant's agent or employee was not the knowledge of defendant, unless the agent or employee was charged with making repairs; and (4) the jury was instructed that defendant was liable if the defect could have been known to defendant by the exercise of ordinary care.

There was competent evidence that plaintiff had been carrying papers over this route for some time; that he had expressed his intention of resigning, and was just about to quit, but was still working fulfilling his contract with the tenants, and was receiving pay from his employer for so doing, and in connection therewith was teaching another boy the delivery route. This statement is borne out by the following evidence (Clarence F. Thomas, the plaintiff):

"Q. What is your business, or what business were you engaged in, if any, during the early spring of 1906? A. I was carrying papers on the Muskogee Daily Phoenix. Q. That is the same Phoenix that is being published now? A. Yes, sir. Q. About how long had you been carrying papers? A. On this particular route that you speak of I had been carrying one about seven or eight months. * * * Q. Now, on that morning what was you doing? A. I was carrying papers, or rather, I was teaching another boy the route, and as soon as I taught the boy— Q. You were still working for the paper? A. I was. * * * Q. Were those men regular subscribers for the paper? A. Yes, sir. Q. Was it your duty under a contract with them to deliver them papers? A. It was. Q. Every morning? A. Yes, sir. * * * A. I was showing this boy the route, as I have before stated; that is, I was telling him which people were subscribers of the paper, and mentioned for him to leave them at the places I designated. I was just stating that Momyer took the paper at the time, and he proceeded to throw one. over the transom or under the door. * * * Q. After you were injured did he take the route and deliver papers on it? A. Well, I don't know; I suppose he did. Q. Now, had he been delivering papers before you began to teach him that route? A. I don't reckon he had ever delivered any papers before. Q. How many times had you been teaching him the route at the time you were hurt? A. This was the second day. Q. Was he carrying the papers that morning? A. I think he was; probably I may have had a few of them. Q. Now, Thomas, at the time you say you were delivering the Phoenix, were you employed by any one to deliver these papers? A. I was employed by Charlie Wheeler, circulation manager, to deliver these papers. Q. Wheeler had charge of the circulation of the paper in Muskogee? A. I don't know whether he did or not; I don't know whether he was working on a salary or it was sold to him. Q. You were employed by Wheeler? A. Yes, sir. Q. By whom were you paid; how were you paid? A. Weekly.

Q.   So much a week for delivering these papers?   A. Yes, sir.   Q.   Did it depend on the number of papers you delivered, or was it a fixed sum?   A.   A fixed sum.   Q. How much was it?   A.   Two dollars per week, I think. *   *   *   Q.   Where did you start ahead of him; in what part of the building did you begin to walk ahead of him? A.   I walked ahead of him pretty nearly all the time.   Q. And then you would pass a place where a paper was to be delivered and, you would say, 'Here is a place; a paper here'?   A.   Yes, sir.   Q.   And he would throw it over the transom or put it in some other place?   A.   Yes, sir; that is the reason I went in front of him to see that he did.   *   *   *   I remember it was pust about dawn.   I was at that time carrying papers on the Muskogee Daily Phoenix, and was just about to quit, in fact, I had already resigned, and was teaching another boy my route."

It is next argued that under the facts as shown by the record plaintiff was a licensee, and not an invitee, in defendant's building at the time he was hurt, and in support of this contention the case of *Faurot v. Oklahoma Wholesale Gro. Co.*, 21 Okla. 104, 95 Pac. 463, 17 L. R. A. (N. S.) 136, and other cases along this line have been cited as authority.   The facts in the foregoing case were that at the time of the accident the grocery company was occupying and using a certain brick building in Oklahoma City.   In the rear of the building was a platform where goods were loaded and unloaded.   About the time of the accident defendant had purchased a load of empty boxes from Brown's C. O. D., the defendant promising to send for them, but Brown without any instructions from the defendant delivered the boxes.   The boy who was injured accompanied the driver at his request to direct him to the wholesale house, driving to the proper place to make delivery of said boxes.   The door was fastened, and no one was there to receive them.   The boy, at the direction

of the driver, went to the front of the building and entered defendant's place of business for the purpose of finding some person to receive the boxes. He walked down a passageway, having boxes of goods, etc., piled high on either side. In proceeding down said passageway he walked into defendant's elevator shaft, which was open without any railing or guard, and was seriously injured. The court held that a person injured, although an infant, by falling down an elevator shaft which was left unguarded, in order to recover must show that the owner of the premises was under obligations to protect him from the injury, and the owner of such premises is liable for an injury occurring therein through his negligence only when the person injured comes upon them by invitation, express or implied, of the owner. It is evident from a reading of this opinion that the boy was not invited, either expressly or by implication, to go upon the premises of defendant. They had specifically instructed Brown that they would call for the boxes, and under such conditions the court properly held that he was a mere licensee. In the case at bar we have a different condition. The defendant was the owner of a business block in the city of Muskogee. The premises were rented to numerous tenants, mostly lawyers, a large majority of whom were subscribers to the Muskogee Daily Phoenix, and plaintiff, in compliance with his contracts of subscription, delivered the papers to the tenants daily. They expressly invited him to come to the building for that purpose. This is not a case of a newsboy entering a building to sell papers for his own convenience or benefit without any previous understanding with the tenants, but it is a case where a contract had been entered into for the common interest

and mutual advantage, benefit, and convenience of all parties concerned. It has been held in this state in the case of *A., T. & S. F. Ry. Co. v. Cogswell*, 23 Okla. 181, 99 Pac. 923, 20 L. R. A. (N. S.) 837, that:

" \* \* \* One who goes upon the premises of a rail‑ way company to transact business with it or its agents or to transact business in the operation of the road or who is there by invitation of the company, express or implied, is lawfully there, and the railway company owes him a duty of using ordinary care in the construction and main‑ tenance of its depot and platforms to avoid injuring him. \* \* \* One who goes with the permission and ac‑ quiescence of the owner upon the premises of another solely for his own pleasure and benefit goes as a licensee. \* \* \* But one who goes upon the premises of another in a common interest or to a mutual advantage is there under the implied invitation of the owner.

"The test as to whether there is an implied invitation is stated by Mr. Campbell in his treatise on Negligence in the following language: 'The principle appears to be that invitation is inferred where there is a common interest or mutual advantage, while a license is inferred where the object is the mere pleasure or benefit of the person using it.'

"This language is quoted with approval in *Bennett v. L. & N. Ry. Co., supra* [102 U. S. 577, 26 L. Ed. 235], but the court in that case does not, and we do not here, undertake to say that this principle furnishes an invariable test by which it may be determined in every case whether a person is upon the premises of another under an implied invitation. The courts have not, to our knowledge, fixed any general rule by which such test may be made, and whether an invitation exists in any case must be de‑ termined by the circumstances surrounding the case. But, where the facts of any case bring it within the language of the first sentence of the above quotation, an invitation is implied. It now seems to be the doctrine of the various

state courts of the Union that one who goes to the premises of a railway company to meet an incoming passenger or to accompany a departing passenger is within this rule, and goes upon the premises of the railway company under an implied invitation of the company."

In Underhill on Landlord and Tenant, vol. 2, p. 815, the authority says:

"The landlord is bound to keep the halls and exits in repair so as to furnish a safe and convenient exit and entrance to the tenant and the members of the tenant's family and for his servants and employees. He is not, however, liable for negligence to mere licensees who are on the premises by permission only, and without any allurement or invitation, express or implied, by the owner or occupant. The landlord will not be held responsible either as a matter of law or by an implied contract to those who use the halls, stairways, or entrances solely for their own convenience or pleasure, and who are not either expressly or by implication invited or induced to do so by the purpose to which the premises are appropriated or occupied, or by such a use of the premises by others as will justify a reasonable presumption that they might properly and safely use them. The duty of the landlord to a visitor to the tenant is therefore precisely the same both in character and degree as his duty to his tenant; for, where houses are rented in separate apartments, access to which can only be had by a common passage or hallway, the beneficial use of each separate apartment by the tenant not only necessitates the use of the common passageway by him, but also necessitates the use of the passageway by all who visit him, whether they be tradesmen or other persons who deliver goods to him, his customers, if he shall carry on a business in his apartment, or other persons who call on him for business purposes, as well as those who call upon him for purely social reasons. To all these various classes the landlord owes the same duty and degree of care as he owes to his tenant."

It was held in the case of *Glaser v. Rothschild*, 221 Mo. 180, 120 S. W. 1, 22 L. R. A. (N. S.) 1045, 17 Ann. Cas. 576:

"From the evidence the jury would have had a right to infer that the entrance of the plaintiff upon the defendant's premises was for their mutual benefit, and not for her benefit solely. Thereupon the plaintiff invokes the rule of law which was made the basis of the decision of this court in *Phillips v. Library Co.*, 55 N. J. Law, 307 27 Atl. 478, and is exemplified in other recent cases, including that of *Furey v. New York Central & Hudson River Railroad Co.*, 67 N. J. Law, 270, 51 Atl. 505, * * * viz., that the owner or occupier of lands, who, by invitation, express or implied, induces persons to come upon his premises, or to make use of the premises for a given purpose, is under a duty to exercise ordinary care to render the premises reasonably safe for such use. The application of this rule always depends upon the particular facts and circumstances of the case under consideration." *Wilsey v. Jewett Bros. & Co.*, 122 Iowa, 315, 58 N. W. 114; *Herdt v. Koenig*, 137 Mo. App. 589, 119 S. W. 56; *Seay v. Plunkett*, 44 Okla. 794, 145 Pac. 496; *Miller v. Hancock*, 69 L. T. Rep. 214 [1893] 2 Q. B. 177.

We have examined with great care all the authorities cited by plaintiff in error, many of which on a casual reading would indicate that the test under the facts in this case is whether the purpose of the party on the premises was directly connected with the business actually or apparently carried on there. We do not think the rule is so limited, but, if there is a mutuality of interest between the tenant and the party injured, then such party would be considered to be there at the invitation of the tenant, and the landlord would owe him the duty of exercising ordinary care in the maintenance of his premises. This is the theory on which the Cogswell Case was decided.

Plaintiff in error has cited numerous cases in which book agents, solicitors, and persons seeking employment were injured upon the premises, and were held to be mere licensees. In these cases the injured party was not upon the premises for the mutual advantage, benefit, and convenience of the tenant and himself, but was there for his own personal benefit, and they were held to be mere licensees.

The following cases are applicable to the conditions arising in this case:

In .Coupe v. Platt, 172 Mass. 458, 52 N. E. 526, 70 Am. St. Rep. 293, the court rendered the following opinion:

"The question how far a host is liable to his guest for the unsafe condition of his premises, when he is visited upon an invitation, express or implied, merely in a social way, from considerations of friendship or for pleasure, is not raised by this bill of exceptions. The judge assumed in favor of the defendant that the law of this commonwealth is like that of England, where it is held that, in the absence of traps, neither the poor nor the rich are bound to change the conditions in which they are accustomed to live in order to furnish for their friends or guests, recipients of their gratuitous hospitality, safer or more comfortable surroundings than they have for themselves and their families. The English law on this subject was somewhat considered in Hart v. Cole, 156 Mass. 475, 478 [31 N. E. 644, 16 L. R. A. 557], and in Plummer v. Dill, 156 Mass. 426 [31 N. E. 128, 32 Am. St. Rep. 463], but whether it is to be followed in this commonwealth has never been decided. The question in this case is different. The defendant was a landlord who maintained outside steps and a platform for the use in common of tenants of different parts of her building. The plaintiff was injured by a defect in the platform while passing over it on a visit to one of the tenants, made on his express

invitation to come on a particular day for a particular purpose. The duty of the defendant to keep the platform safe for the tenant, and for those claiming under him, grew out of the contract of hiring. It was a part of the contract that the platform should be kept reasonably safe for the tenant for use in connection with his tenement. The contract impliedly included, not only the tenant himself, but the members of his family, and his servants and agents who might rightfully occupy and use the tenement with him. It included boarders and lodgers, if, in a proper use of the tenement, such persons might be received there by the tenant. It included all persons who, in connection with the use of the tenement by the tenant, might properly pass over the platform under the express authority of the tenant and in his right. To all such persons, by virtue of her contract with the tenant, the landlord owed the same duty that she owed to the tenant personally, to keep the platform reasonably safe. Whether the tenant would or would not have been liable to the plaintiff for an injury received from an unsafe condition of the tenement which he occupied, he expressly authorized the plaintiff to pass over the platform in the exercise of his rights under the contract with the defendant, and the defendant owed the plaintiff the duty which arose from the contract in favor of those who were acting by express authority of the tenant in the tenant's right."

In *Hamilton v. Taylor*, 195 Mass. 68, 80 N. E. 592, the second paragraph of the syllabus is applicable to this case. It is as follows:

"Defendant owned a building, the ground floor of which he rented for a restaurant, which was partitioned so as to provide for a kitchen in the rear; defendant retaining control of an elevator in the rear of the building for the use of all the tenants of the building. The floor of the elevator was in a passageway leading from the alley to the refrigerator in the kitchen of the restaurant, through which deliverymen were required to make deliveries of supplies. Plaintiff was in the act of delivering

ice to the restaurant through such alleyway, when, owing
to a defect in the elevator gates, plaintiff stepped into the
elevator well while the elevator was up, and was injured.
Held, that such facts were sufficient to show an implied
invitation by defendant to plaintiff to use the passageway."

In *Gordon v. Cummings*, 152 Mass. 513, 25 N. E. 978,
9 L. R. A. 640, 23 Am. St. Rep. 846, it is said:

"The plaintiff was a United States letter carrier. The
place which he sought to enter was known as No. 619
Albany street. It was always open, having no door to
close it. Ascending from its threshold, which itself con-
stituted the first step, was a flight of four or five steps,
to a door which opened upon an entry or hallway, in
which were three or four boxes, placed there for the
accommodation of the plaintiff by the tenants of the
defendants who occupied the various stories of the build-
ing for the reception of their mail matter. Among the
rest was a box for that purpose for the mail matter of
Melish, Byfield & Co. who were tenants at will of the
third and fourth floors of the building of the defendants,
and for whom the plaintiff had a letter, which he was
seeking to deliver by placing it in their box. The hall-
way into which the plaintiff sought to enter had a flight
of stairs which led to the next story. The defendants
owned the building, and there was nothing which tended
to show that this hallway was leased, or that they did not
have the entire management of it. A watchman also
employed by them had the general charge of the building
during the night, taking control of it from 6 in the even-
ing until 6 in the morning. How long these letter boxes
had been in the entry, or how often the plaintiff had
visited them in the discharge of his duty as a letter car-
rier, does not fully appear by the report, but their exist-
ence in so public a place, which was, so far as appears,
entirely in the control of the defendants, could not have
been without their knowledge, and, whatever the rights
of the tenants or their servants may have been in the
entry, afforded some evidence that the boxes were there

by the defendants' authority and permission, and that the letter carrier, in visitng them in the performance of his duty, came there by the implied invitation of the defendants for the convenience of their tenants, or, at least, that he was authorized to believe that he came there by such an invitation. While the building was intended for workshops, and while there were no offices in it, it was still one where, to some extent at least, the tenants received letters, and there was a preparation and adaptation of the entry or hallway for the plaintiff's use which might well lead him to believe that he could safely enter in the performance of his duty."

It is next contended under this same subdivision that, if the plaintiff on entering the building entered in pursuance of an express invitation, he became a mere licensee when he attempted to leave by the private stairway at the rear of the building. The testimony shows that it was customary for the tenants and other persons having business in this building to use this rear stairway for the purpose of descending on Main street. It was reasonably adapted to that purpose, and under the facts and circumstances in this case it could not be said that the plaintiff, being an invitee when he entered by the front stairway, had gone beyond the invitation extended to him and became a mere licensee on leaving the building by the rear stairway. There is no contention that he remained in this building or on the rear platform beyond a reasonable time, nor is there any merit in the contention that, if plaintiff entered the building as an invitee, he became a mere licensee when he leaned against the railing of such platform while waiting for his companion, as the evidence disclosed that plaintiff and his companion left the building at practically the same time, and plaintiff placed his hand on the railing and turned to look for his companion,

and as he did so the rail gave way and he fell and was injured. There is no evidence that he was sitting or lounging upon this railing. The railing was placed there for the purpose of preventing people falling from the platform, and under the evidence the jury was justified in finding that it was used for the purpose for which it was constructed.

It is next urged under this same assignment that instruction No. 5 is prejudicial, in that there could be no recovery unless plaintiff proved that defendant had knowledge of such defect, or that the defect was of such a nature that defendant could have known of the same by the exercise of ordinary care. This presents but one question for our determination, and that is whether or not there was sufficient evidence to justify the submission of the question to the jury. We have examined the testimony very carefully on this subject, and are of the opinion that there was sufficient evidence on this question to warrant the trial court in submitting the same to the jury, and, the jury having found this issue against defendant, the same will not be disturbed.

The cause should therefore be affirmed.

By the Court: It is so ordered.