## PATERNOSTRO v. BRADLEY et al.
### (No. 9116.)

(Court of Civil Appeals of Texas. Dallas.
May 24, 1924.)

**1. Landlord and tenant ⬄167(2)—Landlord, who retained control over passageway, held liable for damages to tenant's invitee because of failure to keep in reasonably safe condition.**

Landlord, who retained control over passageway for use of all tenants, impliedly agreed to keep passageway reasonably safe for tenants and their invitees, and was liable for injuries sustained by tenant's invitee because of uncovered well in passageway.

**2. Landlord and tenant ⬄169(11)—Tenant's invitee, who used passageway with knowledge of defective condition, held not contributorily negligent as matter of law.**

Tenant's invitee, who used passageway with uncovered well, with knowledge of its dangerous condition, was not contributorily negligent as a matter of law.

**3. Landlord and tenant ⬄167(2)—Landlord who let premises with nuisance thereon liable for injuries caused by nuisance.**

Landlord who let premises with unprotected well in passageway, constituting a nuisance, was liable for injuries therefrom.

Appeal from District Court, Dallas County; Louis Wilson, Judge.

Action by Lillian A. Bradley and another against Samuel Paternostro. Judgment for plaintiffs, and defendant appeals. Affirmed.

Spence, Haven, Smithdeal & Spence, of Dallas, for appellant.

Thomas, Frank, Milam & Touchstone, of Dallas, for appellees.

VAUGHAN, J. This is an appeal by appellant from a judgment rendered against him in favor of appellees, Lillian A. Bradley and her husband, L. A. Bradley, for the sum of $5,000 as damages for personal injuries sustained by appellee Lillian A. Bradley, as a result of falling in an uncovered well located on certain premises belonging to appellant, situated in the city of Dallas.

Appellees alleged, in substance, that on December 26, 1917, appellant was the owner of a lot of land situated in the city of Dallas, a part of block 321, fronting 67.4 feet on Flora street and 84 feet on Fairmount street, on which there were four dwelling houses belonging to appellant and occupied by his tenants; that three of these houses faced on Flora street and were numbered, respectively, 2411, 2413, and 2415; that there was a passageway between the houses described as Nos. 2411 and 2413 Flora street, which was used in common for purposes of ingress and egress by the tenants on the premises, their guests, tradesmen, and other persons lawfully on the premises; that this use was known to appellant, and that said common passageway was not under the exclusive control of the tenants occupying any one of said houses, but was under the control of appellant for the common use and benefit of those occupying the other houses and other persons lawfully on the premises; that under such circumstances it was appellant's duty to use reasonable care to keep the passageway in reasonably safe condition; that, unmindful of his duty, appellant failed to use such care, in that, to his knowledge, on the date in question, there was located in the passageway, which was dark and unlighted at night, a well, either open or with a flimsy covering, flush with the ground; that within appellant's knowledge this well constituted a menace to life and limb, and constituted an active and continuing nuisance, and that the condition of the well was well known to appellant, and had been known to him for a long time prior to giving possession of any part of the premises to any of the tenants on the premises at the time the accident occurred; that appellee Lillian A. Bradley, a corsetiere, on the date in question, for the purpose of collecting money owing her by one Catherine Jackson, a tenant at 2413 Flora street, went upon said premises, and, receiving no response to her knock at the front door, made her way to the rear through the dark passageway, and, failing to find Catherine Jackson there, attempted to return through the same passageway, and in so doing fell in the open and unprotected well, as a result of which she sustained serious and permanent injuries, and was thereby damaged to the extent of $30,000, for which appellees sued.

From now on the use of the term "appellee" will refer to Mrs. Lillian A. Bradley.

Appellant answered by general demurrer, certain special exceptions, and specially pleaded that he retained no control over the premises and was not responsible for their condition; that appellee was a mere trespasser on the premises to whom appellant owed no duty except that of not causing intentional injury; and, further, that appellee knew of the existence of the well on the premises, and therefore assumed the risk of going upon them, and was guilty of contributory negligence.

The case was submitted to the jury on special issues, and on the answers of the jury thereto judgment was entered for the appellee against appellant in the sum of $5,000 from which this appeal was prosecuted and is now presented on the following propositions:

(1) That in the absence of a statute the tenant and not the landlord is prima facie liable to third persons for damages resulting to them on account of injuries caused

⬄For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

by defects in the rented premises, and in the absence of a covenant on the part of the landlord to repair, even though the landlord has rented parts of the premises to several different persons who have the use of a common passageway or yard, and third persons, invited on dangerous premises by one of the tenants, and injured because of defects therein, must look for redress to the tenant who gave the invitation and not to the landlord.

(2) That, even assuming that by leasing the premises to his various tenants appellant impliedly retained control of the common back yard, since appellee was invited on the premises by Catherine Jackson, she could have no greater rights against appellant than had Catherine Jackson herself, and, since the condition of the well on the premises was the same at the time of the demise to said Catherine Jackson as it was at the time of the accident, and was patent and obvious, and its existence known both to said Catherine Jackson and to appellee, neither Catherine Jackson nor appellee could recover against appellant for injuries received from falling into the well.

(3) The jury having found in answer to special issue No. 12 that the existence of the well had been brought to appellee's attention prior to the evening of the accident, and the testimony of appellee showing that she entered the narrow passageway in which the well was located in the darkness, that she was a person of defective vision, and that before stepping onto the well she saw what she took to be either a shadow or a board on the ground, appellee, as a matter of law, was guilty of contributory negligence, which bars her right to recover against appellant, especially when to her knowledge there was a safe way of leaving the premises equally available to her.

(4) That in view of the undisputed evidence in this case the answers of the jury in response to special issue No. 10 that appellee exercised ordinary care for her own safety in going to and from said premises is so inconsistent with their answer to special issue No. 12, to the effect that the existence of the well in question had been brought to appellee's attention prior to the evening of the accident, that no judgment could be rendered under said findings, and the court should therefore have granted appellant's motion to set aside the verdict of the jury and grant him a new trial.

Following are the material facts established: The property is situated on the northwest corner of Flora and Fairmount streets in the city of Dallas, fronting 67½ feet on Flora street and 84½ feet on Fairmount. Upon it were four houses, three of which numbered, from east to west, 2411, 2413, and 2415, fronting south on Flora street, and the last house faced east on Fairmount street.

262 S.W.—57

Around the property originally was a fence, but at the time of the accident in places had become out of repair. In front of each house was a gate, and there was a space for a gate on Fairmount street, immediately in the rear of the corner house. The house known as 2411 at the time of the accident was vacant; that known as 2413 was occupied by Catherine Jackson and her husband, and that situated at the corner of Flora and Fairmount streets was known as 2415 Flora street, and was occupied by one Lottie Evans. Between the vacant house and the Jackson house was a passageway approximately eight feet in width, and extending the length of the two houses a distance of about 45½ feet. At the northwest corner of the Jackson house was an abandoned well approximately 2 feet 8 inches in diameter, the north side of which was on a line with the north end of the Jackson house and the easternmost edge of which was about 1 foot from the west line of the Jackson house. This well was practically flush with the ground, and was covered with some galvanized tin or iron, over which the tenant, Catherine Jackson, had thrown an art square. From the western edge of the well to the northeast corner of the vacant house (2411) is a distance of 5½ feet, while 2 feet south of the well is a tree located in the passageway between 2411 and the Jackson house. The distance between the tree and the Jackson house is 3 feet, and that between the tree and the vacant house, 5½ feet. A fence running from the rear of the Fairmount street house stopped at a point 4 feet north of the well, leaving an opening of that width through which the tenants and other persons on the premises could pass. Three feet east of the northeast corner of the Jackson house was a hydrant, the use of which was common to all four of the houses.

The evidence in regard to the main cause and purpose of the appellee coming upon the premises on the night of the accident was practically undisputed, and the following facts were established thereby: Appellee was a corsetiere, working principally among colored people, from whom she took orders for corsets, accessories, surgical garments, and things of that nature. On October 23, 1917, she took an order for a corset from said Catherine Jackson. Appellee thereafter visited Catherine Jackson a time or two for the purpose of taking measurements. The merchandise arrived on the 24th of December, 1917, on which date Catherine went to appellee's house to examine it, and requested appellee to call at her house in the evening of the 26th of December, stating that she would then either make a payment or take the corset. Appellee went to Catherine's house about 10 minutes to 7 on said date for the purpose of getting a payment on the corset. Getting no response at the front door, she went to the back, by way of the passageway

between 2411 and 2413 Flora street, and arrived safely at the back door. On knocking a negro man informed her that Catherine was not at home, but would be back shortly. Whereupon appellee, as per her testimony, attempted to retrace her steps and almost immediately fell in the well. Appellee further testified that on a previous visit Catherine had told her that if she did not find her (Catherine) in the front room that she (Catherine) would be at the back, as the front room was rented to another negro woman, but that Catherine did not tell her to come to the rear of the house on this particular night.

Appellant owned the premises in question, and had rented the houses thereon to the tenants occupying same. It was neither alleged nor proved that appellant had ever contracted to repair the premises at the time they were let.

Following are the material findings of the jury from the evidence in reply to special issues submitted: That the space between houses 2411 and 2413 Flora street, which included the well in question, was not leased exclusively to any one of the tenants on the premises at the time of appellee's injuries; that this space was used as a common passageway or path by the tenants occupying the houses thereon, and other persons on the premises; that appellant knew, or, in the exercise of ordinary care, could have known, of such use; that such space and the part thereof containing the well in question was in a condition dangerous to persons passing through it at the time house No. 2413 Flora street was leased to Catherine Jackson, the tenant occupying it; that the appellant knew of such condition at the time the house was rented; that there was no material change in the condition of the passageway between the time it was leased and the time of the accident; and that the appellant failed to use ordinary care to keep the passageway in a reasonably safe condition for the use of the persons on the premises.

A careful consideration of appellant's propositions reveals that a general discussion will be just as effective to dispose of this case on its merits as a discussion of the propositions seriatim.

[1] Appellant retained control of a passageway between Nos. 2411 and 2413 Flora street for the use of all of the tenants occupying said houses in connection with their respective tenements. The dangerous condition of the passageway was, therefore, not in the premises leased to and controlled by Catherine Jackson or in the premises leased to either of the other tenants. This space was used as an entrance from Flora street, on which said houses fronted, by persons having occasion to go to the rear of said buildings. The control thus retained over said passageway made it the duty of appellant to use reasonable care to keep same in repair to keep it in suitable condition for the reasonably safe passage of persons lawfully using same. In other words, in thus leasing only a part of the premises. retaining control over that part not leased, it was a part of the contract by implication that said passageway would be by appellant kept reasonably safe for the tenants to use in connection with the tenements occupied by them respectively. The terms of this implied contract included appellee, who, in connection with the use of the tenement at 2413 Flora street by Catherine Jackson, the tenant, was at the time of the accident properly using said passageway under the express authority of said tenant and her right. Coupe v. Platt, 172 Mass. 458, 52 N. E. 256, 70 Am. St. Rep. 293.

As a logical sequence it therefore follows that, by leasing to his tenants that portion of the premises occupied by them, appellant became liable to appellee for the defects in said passageway on the ground that by making such lease he impliedly invited appellee, and others similarly situated, to enter said passageway for the purpose of having business relations with either one of his said tenants. It was therefore the duty of appellant to have exercised reasonable diligence to make such passageway reasonably safe for appellee so entering thereon, the lease being, in effect, an implied invitation to such persons, generally, other than the tenants rightfully in such passageway, to enter and use same as it was to the tenant occupying the rented premises.

It is true that at common law no duty was imposed upon the owner to use care to keep his property in such condition that persons going thereon without his invitation may not be injured. Appellee was upon the premises leased by appellant through implied invitation; therefore appellant owed her the duty to use care to keep his property in such condition that persons going thereon lawfully would not be injured. Through this the question of negligence was reached. Therefore negligence was properly predicated upon appellant's failure to use the degree of care required of him by law in discharge of the duty imposed. Dobbins v. M., K. & T. Ry. Co., 91 Tex. 61, 41 S. W. 62, 38 L. R. A. 573, 66 Am. St. Rep. 856.

It is evident that the jury must have found that the appearance of the premises was such as to indicate that the passageway was a mode of approach from the front to the rear of such buildings, and that it was intended by appellant that same should be so used, not only by this tenant, Catherine Jackson, but by others rightfully there for the purpose of having business or social relations with her. The property leased by appellant was constructed and leased for the purpose of a residence. Roman v. King, 289

Mo. 641, 233 S. W. 160, 25 A. L. R. 1263, from which we quote the following as being applicable as a proper rule of construction to the facts of this case:

"It is supported by reasoning, which seems to us unanswerable, and may be stated in its direct application to this case as follows: Whenever the owner of a house demises a portion of it to which access is had by way of halls, stairways, or other approaches to be used in common with the owner or tenants of other portions of the same premises, the owner, by such transaction, retains as to the tenant the possession and control of the undemised facilities, and it is his duty to keep them, or to use reasonable care to keep them, in safe condition for the use of the tenant in the enjoyment of his own possession. Without the application of this rule in his favor the tenancy is a farce, and the tenant from month to month * * * may be evicted without notice by the simple refusal of his landlord to maintain the only means of access. * * * It is a principle too well established to be * * * thoughtlessly abandoned that one who invites another to come upon his premises is bound in law to see that those premises are in such condition that the invitation may be safely accepted. * * * The property was constructed for the purpose of a residence, and was so used. This use implies free entrance and exit for business and social purposes, and the most of the cases to which we have already referred hold that all persons so entering and leaving do so upon the implied invitation of the owner, and are equally entitled to the same protection as the tenant himself."

As said in paragraph 98, Tiffany on Landlord and Tenant, vol. 1:

"It is impossible to state with exactness the classes of persons to whom the landlord is thus under obligation to keep safe the passageway and other places used in common by the tenants as having impliedly invited them to use such places. It seems that they should be such persons as the landlord would have reason, in view of the nature of the premises leased to the individual tenants, the circumstances of the leasing and the nature of the place in question, to expect to be in such place."

And the rule is so aptly stated in section 51, Tiffany on Real Property (2d Ed.):

"If the owner of a building, while leasing different parts thereof to different tenants, retains the control of parts of the building, such as entrances and stairways, for use by the various tenants and the persons who may have occasion to visit the tenants, he is bound to exercise reasonable diligence to keep in proper repair the parts so under his control, and is liable for failure in that regard to all persons rightfully thereon."

What distinction can be made between different parts of a building and the passageway therein used in common and different dwellings on the same premises with passageways between the buildings used in common? If the principle announced by appellant would apply in one case, certainly it would apply in the other, or we would have one rule of law applicable to the liability of a landlord for injuries caused by defects and dangerous conditions not in the premises leased to the tenant, such as common passages and stairways used in connection with the various apartments in a building leased to different persons, but in places adjacent thereto which are retained and controlled by the landlord, and another applicable to the liability of a landlord for injuries caused by defects in a common approach to separate buildings, as in the case of yards, spaces, and platforms intended for use by the various tenants of the person in control. In other words, it would not be the operation of a principle on like or similar conditions, but would be a distinction, vital in its effect, on account of the particular location on the premises of the defects and dangerous conditions, and not on account of the injury resulting from the existence of such defects and dangerous conditions.

We therefore hold that appellee, under the facts in this case, was rightfully on the premises and in the use of the passageway at the express invitation of Catherine Jackson, one of appellant's tenants, and by the implied invitation of appellant, and therefore it was the duty of appellant to have exercised ordinary care in the maintenance of said passageway so as to have kept same in a reasonably safe condition for the use of those rightfully thereon. English v. Thomas, 48 Okl. 247, 149 Pac. 906, L. R. A. 1916F, 1110; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Learoyd v. Godfrey, 138 Mass. 315; Roman v. King, supra.

[2] It is urged that, in view of appellee's knowledge of the condition of the passageway, in that she knew of the location of the uncovered well therein, same having been theretofore pointed out to her, and, further, that it was a dark night, no light in the passageway, and that she was a person of defective vision, she was therefore, as a matter of law, guilty of contributory negligence, which barred her right to recover. To this proposition we have been unable to assent. Certainly the mere use of the passageway, after knowledge of its dangerous condition, was not of itself conclusive evidence that appellee had not used due care for her own protection in the use of such passageway at the time of her injuries. On the issue of contributory negligence the jury found that appellee exercised due care for her own protection.

The additional finding that she had knowledge of the location of the well in the passageway was not in conflict with the finding that she exercised due care for her own safety, etc., in that, the use of the passageway, after knowledge of its dangerous condition, was a circumstance to be considered, and no doubt was considered, by the jury in find-

ing that in the use of such passageway on the occasion of her injury appellee exercised due care for her own protection. The knowledge of the location of the well in the passageway was not all of the evidence to be considered by the jury, but only a portion thereof, bearing upon the issue as to whether or not appellee was guilty of such negligence as contributed to the cause resulting in her injuries. City of Hillsboro v. Jackson, 18 Tex. Civ. App. 325, 44 S. W. 1010, in which the court held:

"That plaintiff was shown by the petition to have had, at a time previous to the accident, knowledge of the existence of the dangerous place, would not of itself have warranted a court in directing a verdict against her, as being guilty of contributory negligence at the time she was hurt." Romas v. King, supra; Looney v. McLean, 129 Mass. 33, 37 Am. Rep. 295; Home Realty Co. v. Carius, 189 Ky. 228, 224 S. W. 751.

[3] The liability of appellant did not rest alone upon the proposition that appellee was an invitee. Under the findings of the jury the premises were let with a nuisance thereon, an unprotected well in the passageway constituted the nuisance at the time same were let. This condition continued and by means of which the injuries complained of were received by appellee. Appellee, as to the making of the lease contract and the possession of the tenement by the tenant thereunder, was a third party. Therefore, resting the rights of the parties upon the proposition that "when premises are let with a nuisance upon them, by means of which the injury complained of was received, the landlord and not the tenant in possession is liable to a third person for damages accruing by reason of defects in the leased premises," appellant was liable, and the trial court did not err in rendering judgment for appellee on the findings of the jury. O'Connor v. Andrews, supra; Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620.

Finding no reversible error in the proceedings, the judgment appealed from should be affirmed, and it is so ordered.

Affirmed.