## J. C. O'Connor v. B. E. Andrews.

### No. 6839.

1. **Liability of Tenant for Unsafe Buildings.**—The rule of law is well settled that the tenant is bound to repair the premises leased to him. To this rule are the exceptions:

1. Where the landlord has by express agreement between the tenant and himself agreed to keep the premises in repair.

2. Where the premises are let with a nuisance upon them.

2. **Same—Presumption.**—In the absence of any contract on the subject of repairs the tenant and not the landlord is responsible for them, and for damages resulting from

the want of repairs.   This is applicable where the entire building is let to one tenant, but not where a building containing a number of apartments is divided among several tenants.   In the latter case where each takes a distinct portion and none rent the entire building each tenant is responsible for so much only as his lease includes, leaving the landlord liable for every part not held by any to his tenants.

3.   **Same.** — The landlord is liable for injuries caused by defects in his buildings overhanging a street, although the buildings are not actually occupied by him nor leased as before stated.

4.   **Same—Practice.**—Where the testimony showed that the building causing the injury was leased to several tenants, each holding separate parts, it was correct practice to submit to the jury whether the parts of the building from which the injury resulted were included within the terms of any of the leases of his tenants.

5.   **Same—Joint Causes of Injury.**—If the landlord was responsible for the condition of the wall which fell and caused injury, and knew that it had been rendered dangerous by attaching an electric wire to it, and knowingly or without the use of proper diligence permitted the dangerous condition to remain, he was properly held to be responsible for the consequences, although the wire was the immediate cause of the falling of the parts of the wall causing the injury.

6.   **Same.**—The mere fact that another person concurs or co-operates in producing the injury, or contributes thereto in any degree whether large or small, is of no importance as to the liability.

7.   **Falling Cornice and Fire Wall.**—If the cornice and fire wall (the parts of the building falling) were not included in the lease to any of the lessees (a question of fact submitted), then the ownership by the defendant left them in his constructive possession although there was no evidence of actual possession.

8.   **Immaterial Issue.** — The evidence showed the original defective construction of the building and the subsequent purchase of it by defendant.   There was no testimony to the date of the leases under which the tenants held.   *Held*, that it was not error for the court to instruct upon the liability of a landlord leasing a building dangerous at the time.

9.   **Depositions of Witnesses Present at Trial.** — It has been decided by this court that the depositions of a witness who is present at the trial may be read.   Schmick v. Noel, 64 Texas, 406.

10.   **Immaterial Testimony.**—That other buildings in the city were alike defective, or that at the time the building was erected the custom among builders was to build in a like unsafe style, are immaterial issues.   The exclusion of such testimony is no ground of complaint.

APPEAL from Dallas.   Tried below before Hon. Geo. N. Aldredge.  The opinion states the case.

*Crawford & Crawford,* for appellant.—1. The occupant is prima facie liable to third persons for damages accruing to them from defects in the leased premises.

2.   To the general rule above stated there are two exceptions.   (1) Where the landlord has, by express agreement between the tenant and himself, agreed to keep the premises in repair.   (2) Where the premises are let with a nuisance upon them, by means of which the injury complained of is received.   When either exception is relied upon the

facts rendering the landlord liable must be alleged and proved.   Marshall v. Heard, 59 Texas, 267; Gridley v. Bloomington, 68 Ill., 48; Fisher v. Thirkell, 21 Mich., 1; City of Lowell v. Spaulding, 4 Cush., 277.

A lease of the building includes the whole of it—outside walls and roof.   Lowell v. Strahan, 145 Mass., 1; Same Case, 1 Am. Rep., 422; Riddle v. Littlefield, 16 Am. Rep., 388.

The tenant must repair the roof.   Weinsteine v. Harrison, 66 Texas, 546.

3.   The owner of a building is not required in its construction to use every possible means to make it safe, or to guard against injury to third persons.   Railway v. Halloren, 53 Texas, 46; Shearm. & Redf. on Neg., sec. 498.

4.   Whenever there intervenes the independent act of a third person between the defendant's negligence and the injury sustained, and it affects the result and is the immediate cause of the injury, the plaintiff can not recover against the original wrongdoer.   Seale v. Railway, 65 Texas, 274; Tutein v. Hurley, 98 Mass., 211; Weeks Damnum Ab. Inj., sec. 115; Field on Dam., sec. 664.

5.   The plaintiff in his petition must state the nature of the defendant's liability and must prove it as alleged.   The allegations in the petition are, that on the 8th of May, 1885, appellant was the owner of and in possession of the building, and that it was his duty to keep the wall, including the cornice and fire wall, in safe condition, and that he negligently permitted the same to become unsafe and dangerous.   There is no allegation that the premises had been leased, or that they were in a dangerous condition when leased.

When the petition alleges as the basis of the defendant's liability that he was the owner and occupier of the premises which were out of repair, and in consequence of which the injury occurred, no recovery can be had upon proof that the premises were occupied by his tenants, even though it was the defendant's duty as landlord to make the proper repairs.   Gridley v. Bloomington, 68 Ill., 47.

*Robertson & Coke, Edward Gray, R. B. Seay*, and *H. G. Robertson*, for appellee.—1.   When a landlord leases different parts of a building to different tenants the presumption is that he retains possession of the fire wall and like parts for repairs.   The rule stated in appellant's propositions applies to a single tenant occupying the entire building.

2.   The allegations in the petition were sufficient to allow the proof of all the facts and circumstances connecting O'Connor with the building.   As owner he was liable for its dangerous condition by reason of its ill construction and decayed condition, and as occupant he was in possession of such parts of the building as were not in the exclusive possession of the tenants, and was liable to the public for the condition of the fire wall suspended over the public street.

HENRY, ASSOCIATE JUSTICE.—Appellee instituted this suit in the District Court of Dallas County to recover damages for injuries alleged to have been received by Mrs. Andrews, wife of appellee, by the falling of a cornice and fire wall from appellant's building on May 8, 1885.

The petition alleges, that on the 8th of May, 1885, appellant was the owner of a two-story brick house situated on the corner of Elm and Lamar Streets and Pacific Avenue in the city of Dallas, the west wall of the building extending along the east side of Lamar Street from Elm Street to Pacific Avenue, and that appellant was in possession of said building, and that it was his duty to keep the wall and cornice in safe condition; that he negligently permitted the cornice and fire wall to become unsafe and dangerous; that on said date the cornice and fire wall fell to the sidewalk and struck and knocked down and seriously injured Mrs. Andrews, who was at the time passing along the east side of Lamar Street.

Appellant pleaded as follows:

"1.   General denial.

"2.   That at the time the cornice and fire wall fell appellant was not in possession of any part or parcel of the building, but that the whole of it was leased to tenants, who were under obligations to keep the same in repair; that the whole of the upper story was used and occupied by the Western Union Telegraph Company, under a lease made in November, 1883, which had not expired at the time of the accident; that said company had so occupied the upper story of the building since November, 1881, and before that time; that by the terms of the lease the telegraph company was to repair the building, and was not to call upon appellant for any outlays whatever in reference thereto.

"3.   That before the date of the accident the electric light company, without the knowledge or consent of appellant, stretched and hung the wires used in the conduct of its business from and across the cornice, and upon the date of the accident had negligently permitted the lamp which hung from the electric light wire into Lamar Street to hang so low and near the ground that a wagon driven along Lamar Street got fastened in the lamp attached to the wire, and that the cornice was pulled down by the wagon and wire without any fault or negligence on the part of the appellant, but by the negligence of the electric light company."

Upon the verdict of a jury judgment was rendered in favor of the plaintiff for $700.

The plaintiff introduced evidence showing that his wife was injured while she was passing along the sidewalk on the street by the falling of the fire wall and cornice, as alleged in his petition, and also tending to show that the part of the building that fell was out of repair and in a dangerous condition.

The defendant testified, that he was the owner of the building at the time of the injury to plaintiff's wife; that the lower portion of the building was then leased to and occupied by the City National Bank (of which defendant was president) and two other persons, one of whom kept a clothing store and the other one a saloon, and the upstairs to the Western Union Telegraph Company; that he had no portion of the building as a separate apartment for his individual use; that he was paid a salary as president of the bank; that he wrote most of his letters and transacted the greater part of his private business at the bank and used the bank's desk, having none of his own there, and kept his papers in the bank's safe, as its other customers did; that he did not reserve the right to transact his private business in the office of the bank; that a stairway led from the front of the building to the second story, and that he paid for the repairs to the building after the accident.

The terms and conditions of none of the leases were proved.

Among other things the court instructed the jury that "every owner of a building is required by law to use reasonable care and diligence to keep it in such condition that it will not inflict injury upon others, and if he fails to do so and injury is caused thereby such failure would be negligence. This is given subject to the following qualifications: If all of said building had before said accident been leased to tenants, including the cornice and fire wall that are claimed to have fallen, then the duty of keeping said cornice and fire wall in repair was upon said tenants, and not upon defendant; hence, if you so find the tenancy to be, you can not find that defendant was negligent unless you find that said cornice and fire wall were in a dangerous condition when he leased said building, and that he then knew of its defects or, by the use of reasonable prudence and care, could have known of their existence."

The defendant requested the following charges, which were refused:

"The tenant and not the landlord is prima facie liable to third persons for damages resulting to them on account of injuries caused by not having the rented premises in proper repair.

"The plaintiff alleges that the defendant was the owner and occupier of the building at the time the cornice and fire wall fell, in May, 1885. Before the plaintiff can recover he must prove the allegations as made by him—that is, that the defendant at the time of the accident was the owner of the building and was in possession of the same. If the testimony shows that the building was leased to various tenants, one of them being the City National Bank, the fact that the defendant was president of the bank would not be such possession or occupation as would make him the occupier of the building. By the possession of the owner in law is meant the owner's right to control and manage the property, and if the proof shows that all the rooms in the building were occupied by tenants the defendant is not liable in this action,

there being no allegation in the petition that the defendant had made any agreement to repair the premises."

Error is assigned upon the refusal of the court to give the requested charges, and the appellant submits the following propositions in support of his assignment:

"1.   The occupant is prima facie liable to third persons for damages accruing to them from defects in the leased premises.

"2.   To the general rule above stated there are two exceptions. (1) Where the landlord has, by express agreement between the tenant and himself, agreed to keep the premises in repair.   (2) Where the premises are let with a nuisance upon them, by means of which the injury complained of is received.   When either exception is relied upon the facts rendering the landlord liable must be alleged and proved."

The rule of law is well settled that the tenant, subject to the exceptions mentioned in the second proposition, is bound to repair the premises leased to him.   In the absence of any contract upon the subject of repairs the tenant and not the landlord is responsible for them and for damages resulting from the want of repair.   Such liability of the tenant is a presumption which will be indulged in the absence of evidence, but never against it, and which will be applied in controversies between the landlord and tenant.   It may be doubted whether it should be given in charge and held equally conclusive in a controversy between the landlord and a stranger, when the landlord testifies as a witness in the cause without disclosing the terms of the lease, and when the evidence shows that the landlord made the needed repairs subsequent to the accident.   Readman v. Conway, 126 Mass., 374.   When the whole building is leased to one tenant, without an express agreement about repairs, the correctness of the second proposition must be admitted.

When, however, a building consisting of a number of different apartments is divided among several tenants, each one of whom takes a distinct portion and none of them rent the entire building, the rule must then be applied so as to make each tenant responsible only for so much as his lease includes, leaving the landlord liable for every part of the building not included in the actual holding of any one tenant.

We do not think that the plaintiff's pleadings were defective in the particular mentioned in the second proposition.   They alleged that the defendant was the owner of the premises, and were sufficient to support evidence charging him in that capacity.

In Washburne on Real Property, volume 1, fifth edition, top page 570, it is said:   "This liability to a third party seems to depend upon whether the tenant has the entire control of the structure which causes the injury, or is one of several tenants having control only of the part he occupies.   Thus, where one traveling along a street is injured by falling ice or snow from an awning in front of stores, one or more

in a building, or from the roof of the building, if the tenant in such cases has the sole control of the building he alone is liable to the party injured. If the owner has the general charge of it, or of the roof, or occupies it in connection with tenants, he will be liable instead of the tenant who occupies a part only of the premises for any injury from the part not expressly demised. So if the injury arise from the erection of the building itself, or from a defect in its original construction, the landlord is liable."

The Supreme Court of Maine, in the case of Sawyer v. McGillicuddy, 81 Maine, 318, says, "that the obligation to repair, in the absence of any express agreement, depends upon the right of possession, and that an appurtenant attached to and made for the accommodation of several different tenements, leased to different tenants, remains in the possession of the lessor, though the use of it goes to the lessees." This case contains the following reference: "In Shipley v. Fifty Associates, 101 Massachusetts, 251, the whole building was leased to different persons in tenements, under leases requiring the tenants to make repairs, and yet it was held that the possession of the roof, however necessary to all, was not conveyed to any one of the tenants, nor to all jointly, and was therefore left in the owners, who were liable for new repairs." Kirby v. Boylston Market Association, 14 Gray, 249.

The mere lease of the different parts of the building to different tenants, each one taking a distinct and separate part of it, in the absence of an express agreement to the contrary, only bound each one for the repair of so much of the building as he rented. The roof covered and was necessary to all of them alike, but it was not proved to be the duty of any one of them to repair it, and as there does not appear to have been any joint contract, a duty that did not devolve upon any one of the tenants separately did not attach to all of them collectively. The charge of the court left it for the jury to find as a fact whether those parts of the building from which the injury resulted were included in the lease to any of the defendants, and assumed the liability of the owner of the building to exist in the event only of their not having been included in the leases of any of the tenants. This, we think, was correct, and it follows that it would have been improper to give the charge upon that issue that was requested by the defendant. The refused charges contain two other propositions which, even if they had been within themselves correct, were properly refused because they were coupled with an incorrect proposition.

We think, however, it would have been error to charge that the plaintiff could not recover without proving that the defendant was both the owner and the occupant of the building. If he was shown to be liable to plaintiff as owner he was entitled to recover, notwithstanding his failure to also prove the defendant's occupancy.

If it be conceded that the defendant's occupancy of the building as president of the bank would not be such possession as would make him responsible if otherwise exempt from liability, and that a charge to that effect should have been given if separately requested, still we do not think that even then the refusal to do so would have been a material error under the facts of this case requiring a reversal of the judgment.

The appellant complains, "the court erred further in refusing to instruct the jury that notwithstanding the proof may show that the fire wall and cornice were defectively constructed and that the defendant was negligent in failing to repair the building, you must still believe from the testimony that the negligence of the defendant was the direct and immediate cause of the falling of the cornice and fire wall. Therefore, if you believe from the evidence that at the time said cornice and fire wall fell a wire was stretched across Lamar Street, and a wagon passing along Lamar Street caught in the wire and thus caused the fall, and that the wall and cornice would not have fallen at that time but for said wire, the pulling of the wire would be the proximate cause of the fall; and if you so find, your verdict will be for the defendant."

Instead of giving the charge requested the court at its own instance gave one reading as follows: "The proximate cause of the falling of said cornice and fire wall was the pulling of a wire attached to it, and if when said wire was so attached said tenants had possession of said cornice and fire wall under a lease or leases from defendant and were still so in possession at the time of the accident, then defendant was guilty of no negligence, and you will find for the defendant. If, upon the other hand, you find that the accident was so caused, and that the defendant had leased to tenants the rooms in said building, but that said cornice and fire wall were not in the possession nor under the control of said tenants at the time of the accident, and if you further find that the defendant knew, or by the use of reasonable care and prudence could have known, that it was so attached to said cornice and fire wall, and that it would naturally produce accident and injury to those passing along the street, then the allowing it to remain so attached would be negligence on defendant's part. If you find that the accident was caused by the pulling of a wire so attached, and that said cornice was in possession of and under the control of defendant, and if you further find that he did not know it was so attached, and by the use of ordinary and reasonable care would not have discovered it, then the fact that it was so attached would not constitute negligence on defendant's part."

We think the charge given was fully as favorable to the defendant as the facts of the case permitted. If the defendant was responsible for the condition of the wall and knew that it had been rendered

dangerous by attaching the wire to it, and knowingly, or without the use of proper diligence, permitted the dangerous condition to remain, he was correctly held to be responsible for the consequences. "An intervening act of an independent voluntary agent does not arrest causation nor relieve the person doing the first wrong from the consequences of his wrong, if such an intervening act was one which would ordinarily be expected to flow from the act of the first wrongdoer." Thomp. on Neg., sec. 1039. "The mere fact that another person concurs or co-operates in producing the injury or contributes thereto in any degree, whether large or small, is of no importance." Shearm. & Redf. on Neg., sec. 31. If the negligent acts of the defendant and the electric wire company were simultaneous and concurrent, both were liable for the consequences.

The appellant contends that "the court erred in the third clause of its charge in submitting to the jury the question as to whether or not the cornice and fire wall were in the possession of the defendant, there being no proof to show any such possession."

The charge complained of reads as follows: "If you find that said accident was not caused by the pulling of a wire attached to said cornice and fire wall, but that it was dangerous and fell on account of its own defects, and that the defendant was in possession of and controlling said cornice and fire wall at the time of the accident, then upon this state of facts you are instructed as follows: If the defendant knew or might have known by the use of reasonable care of its dangerous condition, it was negligence on his part to allow it to remain so. If, upon the other hand, he did not know of its dangerous condition and could not by the exercise of reasonable prudence have ascertained it, then he would not be liable."

If the cornice and fire wall were not included in the lease to any of the lessees, a question of fact which was submitted by another charge to the jury, then the ownership of the defendant, which was not controverted, left them in his constructive possession even if there was no evidence tending to prove that they were in his actual possession. The charge is not liable to the objection urged by appellant.

Appellant complains of an error in the charge "in submitting to the jury that the defendant would be liable for the injury if the cornice and fire wall were in a dangerous condition at the time defendant leased the building, because there was no proof as to when the leases were made and because there was no allegation in the petition raising such issue as this."

Proof of the time when the leases were made was not material. There was some evidence tending to show that the cornice and fire wall were not securely constructed originally. The date of the defendant's purchase of the building subsequent to its construction was proved. The date as well as the terms of the lease were probably better known to

the defendant than to the plaintiff, and he could not have been materially injured in the respect complained of.

It has been decided by this court that the deposition of a witness who is present at the trial may be read. Schmick v. Noel, 64 Texas, 406. It is a matter that rests with the discretion of the court.

Other rulings of the court are complained of as follows:

"The court erred in not permitting appellant to prove by C. A. Gill the number of tin cornices that had fallen from buildings in this city, and that in each instance of a fallen cornice the same had been pulled down by wires.

"In not permitting the defendant to prove by the witness W. M. Johnson that this house was built like the generality of houses at the time of its construction, and that it was not the custom in this city to tie back fire walls at that time, to-wit, in 1875, the time this house was built.

"In not permitting the defendant to prove by the witness G. R. Sanderson that it was the custom in building here from 1875 to 1880 not to tie back the fire walls, and also in not permitting the defendant to prove by the witness W. K. Wright that the buildings put up in this city in 1875 were put up without braces to the fire walls, and in excluding the answer of this witness from the jury."

We think it would have been improper to admit such evidence.

We find no error in the proceedings for which we think the judgment should be reversed, and it is affirmed.

*Affirmed.*

Delivered May 12, 1891.