**ROSS et al. v. HANER. (No. 833.)\***

(Court of Civil Appeals of Texas. Beaumont. June 16, 1922. Rehearing Denied Oct. 11, 1922.)

**1. Landlord and tenant ☞152(2)—Landlord's promise to repair held supported by valuable consideration.**

Where a tenant rented an apartment by taking over the unexpired term of a former tenant with the landlord's consent, paying $90 a month, and, at the landlord's insistence, purchasing the furniture of the former tenant, the landlord expressly promising to make certain repairs, including that of a defective window screen, without which promise the tenant would not have rented the apartment, the landlord's promise to make repairs was based on a valuable consideration.

**2. Landlord and tenant ☞169(11)—Facts held to raise issue that child would not have loosened screen fastenings and fallen through, in child's favor.**

Where a 7 year old boy fell out of a third story window, because of a defective screen in an apartment rented by his parents from defendant, who had promised to repair the defect, facts *held* sufficient to raise an issue in the child's favor, that he would not have loosened the fastenings of a window and negligently

leaned against the screen causing him to fall to the ground.

**3. Landlord and tenant ☞169(6) — Finding that plaintiff's parents did not know of defective screen causing injury sustained.**

In an action against a landlord for injuries to tenants' 7 year old boy, caused by falling from a third story window, on account of a defective screen which defendant had promised to repair, evidence *held* to sustain a finding that plaintiff's parents did not know of the continuance of the defect.

**4. Landlord and tenant ☞76(2)—Letting lodging not a breach of contract not to underlet.**

Letting lodging is not a breach of a contract not to underlet the premises or any part thereof.

**5. Landlord and tenant ☞169(6)—Finding that landlord's failure to repair was proximate cause of injury to tenant's child sustained.**

Where a 7 year old boy fell from a third story window, in an apartment rented by his parents from defendant, because of a defective window screen which defendant had promised to repair, a finding that defendant's negligence in failing to repair was the proximate cause of the injury *held* sustained by the evidence.

**6. Landlord and tenant ☞168(1)—Child's right of recovery for injuries through continuing negligence of landlord not affected by concurrent negligence of parents.**

Where a 7 year old boy was injured by falling from a third story window, in an apartment rented by his parents from defendant, because of defective screen which defendant had promised to repair, the negligence of the parents, if any, would not affect the child's right of recovery, the negligence of defendant being continuing.

**7. Landlord and tenant ☞164(2)—Child for whose interest landlord agreed to repair held entitled to substantial performance.**

Where the parents of a 7 year old boy rented an apartment from defendant, under an agreement that defendant repair a defective screen so as to conserve the boy's safety, the boy was entitled to a substantial performance thereof, the contract being made in his interest.

**8. Landlord and tenant ☞169(1)—Negligence of plaintiff's parents in failing to repair defects held not to affect right of recovery for injury.**

Where a 7 year old boy was injured by falling through a window, because of a defective screen in an apartment rented from defendant, who had promised to repair, the continuing negligence of the parents to make the repair *held* not, as a matter of law, to affect his rights under the contract to repair, such negligence not constituting the sole proximate cause of the injury.

**9. Negligence ☞59—Anticipation of consequences essential.**

Negligence can only give rise to a cause of action, when its consequences should have been anticipated.

**10. Damages ⬦—20—When cause of action arises in cases, ex contractu and ex delicto, stated.**

In cases ex contractu, recovery can be had for all compensatory damage that may fairly be said to have been within the contemplation of the parties at the time of making the contract, as probable from its breach, but in cases ex delicto, to afford the basis for a cause of action, the injury must be the natural and probable result of a negligent act or omission.

**11. Landlord and tenant ⬦—169(5)—Evidence as to sale of furniture held admissible in action for injuries due to landlord's failure to repair.**

Where a 7 year old boy was injured by falling from a window, in an apartment rented by his parents from defendant, because of a defective screen which defendant had promised to repair, evidence of a sale of furniture by former tenants to plaintiff's parents was admissible on the question of consideration for defendant's promise to repair, defendant having made such purchase a condition to the lease to plaintiff's parents.

**12. Landlord and tenant ⬦—169(11)—Existence of tuberculosis, following injury caused by landlord's failure to repair, held question for jury.**

In an action against a landlord for injuries to a 7 year old child through falling from a window because of a defective screen, whether plaintiff's tubercular condition could be attributed to the injury was a question of fact for the jury.

**13. Landlord and tenant ⬦—169(5)—Evidence as to tuberculosis following injury through landlord's failure to repair, held admissible.**

Where a 7 year old boy was injured by falling from a window in an apartment rented from defendant, because of a defective screen which defendant had promised to repair, evidence that plaintiff's tubercular condition might have resulted from his injury held admissible.

**14. Damages ⬦—132(1)—$22,500 held not excessive for injury to 7 year old boy.**

Where, because of a defective screen, a 7 year old boy fell from a window in an apartment rented from defendant, and as a result became a hopeless cripple who would probably continue to suffer great pain throughout life, a verdict of $22,500 was not excessive.

Appeal from District Court, Harris County; Chas. E. Ashe, Judge.

Action by Thomas E. Haner, by Viola Petrie as next friend, against Mrs. Ellen B. Ross and others: Judgment for plaintiff, and defendants appeal. Affirmed.

Andrews, Streetman, Logen & Mobley, and J. B. Ross, all of Houston, for appellants.

Presley K. Ewing and Ewing Werlein, both of Houston, for appellee.

WALKER, J. Appellee is the son of Mrs. Viola Petrie and the stepson of her husband.

Sidney B. Petrie, who were tenants of appellants from July 1, 1919, to October 1, 1919, occupying apartment No. 36 on the third floor of the Rossonian, a large apartment house in Houston, Tex., belonging to appellants. About the 15th of August, appellee fell from a window in this apartment to the sidewalk, suffering serious and permanent injuries, for which he brought this suit as plaintiff, by his mother as next friend, against appellants. On a trial to a jury on special issues, he recovered judgment for $22,500.

Previous to July 1, 1919, Mr. and Mrs. M. E. Gimble had occupied this apartment as tenants of appellants, under a written contract of lease for a term of 12 months, beginning October 1, 1919, and ending September 30, 1919. Section 3 of this contract was as follows:

"Neither the said premises, nor this lease, nor any part thereof, shall be assigned, let or underlet, or used or permitted to be used, for any purpose other than above mentioned, without the written consent of the said lessor or his agent; and if so assigned, let or underlet, used or permitted to be used, without such written consent, the said lessor may rerent and relet the said premises for said M. E. Gimble or as agent for said lessee, and receive and retain the rent therefor, this lease, at the option of the lessor, thereupon to become void. And consent to assignment, letting, subletting, or use for such other purpose, the express consent in writing of the lessor shall be required. It is expressly agreed that, in case of such assignment, letting, subletting or use, without consent, the lessor may, after reasonable notice, prevent the ingress of persons to the premises claiming under such assignment, letting or subletting, or making such use of the premises; and may, for the purpose of such prevention, use, without liability, all necessary force."

The Petries contracted with the Gimbles and appellants to take over the unexpired term of this lease from July 1st to October 1st, on the following conditions:

(a) They were to assume and become liable to appellants for the payment of the monthly rental in the sum of $90. The Gimbles were to move out and the Petries to move in.

(b) Appellants required the Petries to buy the Gimble furniture, and would not accept them as tenants except on that condition.

(c) The appellants promised the Petries to make certain repairs in apartment No. 36, including the repair of a defective window screen. This screen was defective in that it had no latch to hold it to the window, and, as it was hung from the top, a slight pressure against the bottom caused it to swing out. The promised repair was to put a sufficient fastening on the window. This could have been done at a small cost of about $1. "The absence of such catch was a de-

---

⬦—For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

fect that made the screen dangerous and not reasonably safe."

(d) Appellants' promises to the Petries were conditioned on the surrender of the apartment to the Petries by the Gimbles.

(e) The Petries would not have taken the apartment nor assumed the monthly rental nor the obligation of buying the Gimble furniture, except for appellants' promise to make the repairs. On faith of the contract conditioned as stated, the Petries concluded an agreement with the Gimbles for the purchase of the furniture at a cost to them of $500, which they paid. The Gimbles then surrendered the apartment to the Petries for the unexpired term of the lease, and the Petries became the tenants of appellants, occupying apartment No. 36, and obligated to appellants to pay a monthly rental of $90 for the use of the apartment, which sum they duly paid. Appellants made all the promised repairs in the apartment except the latch on the window screen, which they did not do while the Petries occupied the apartment.

After becoming tenants of appellants, the Petries, relying on the promise of appellants to repair the screen, thought it had been done, and did not learn the contrary until 6 or 8 days before appellee was injured, at which time, on cleaning the apartment Mrs. Petrie discovered that the screen had not been repaired. Forthwith she notified appellants of the condition of the screen, and was informed by them that they thought it had been attended to and promised her to have it repaired at once. The Petries relied on the promise of appellants to make the repairs, and were without knowledge of the continued existence of the defect until after appellee was injured. Such ignorance on their part was negligence. The continued existence of such defect in the screen at the time of the injury was due to negligence on the part of appellants, which was a proximate cause of appellee's injury. Appellee was not guilty of contributory negligence. (The above statement embodies all the jury findings.)

When Mrs. Petrie was negotiating with appellants for the apartment, she told them that she had a small son (referring to appellee, then about 7 years old) who, though not living with her at that time, would live with her in the apartment, and that was one of the reasons why she wanted the apartment; and, as she and her husband were working, he would be left in the apartment under the care of a servant. In regard to the screen, Mrs. Petrie said:

"I certainly had in mind the danger of my boy falling from that window when I mentioned it to Mrs. Ross about the screen."

It was the custom of the Petries to leave appellee in the apartment under the care of a servant, as they explained to appellants they would be compelled to do when they took over the lease. On the morning of the 15th of August, they left him asleep, with no one to care for him, but expecting the servant to come within a few minutes, as she had promised, but on that morning she did not come. Appellee testified as follows, as to the circumstances of the accident:

"At the time that I fell out of this window in the Rossonian, I went to the window to look out to see if I could see Mother, and the screen came open and I fell out. The window I fell out of faced on Fannin street. The window I fell out of was the big window in the middle. I did not climb up on any trunk when I fell out, there was not any trunk at that window. I did not put any chair there and climb up on it, nor did I put anything else there to climb up on. I do not remember anything else after I went out of the window. I never at any time ever opened any of the screen fastenings on any of the windows of the apartment. I don't remember ever playing with them at all. * * * When my mother and father left that morning they did not say anything to me. I wasn't awake; I was asleep. I don't remember what time I waked up. I think it was about 8 o'clock when I waked up. When I got up I got a book and got back in bed. I did not dress myself, because there wasn't no one at home. * * * I say that I went to look out of the window and fell. I wasn't standing on anything but the floor. I was standing just on the floor and did not lean out at all. I could not get either one of my feet off the floor. I just went to the window to look out. No, sir, I did not touch the screen with my hand at all. I touched the screen with my head. In leaning I touched it with my head. I did not touch the screen with my hand. I did not push the screen open with my hands before I began to fall. The screen was closed. I was there trying to look out, leaned forward and I touched the screen with my head. Then I overbalanced and fell out. I am positive now that I didn't put anything there to climb on."

Mrs. Petrie did not know that her son had fallen from the window until she returned from her work to the apartment. She testified:

"On the day of the accident just as I got in front of the stairs an ambulance stopped in front of the Rossonian; I saw the ambulance stop in front of the Rossonian and saw people rush out of the dining room. When I got in front of the building there was a crowd of people, everybody was out there and I knew that evidently there had been some accident of some nature and I rushed inside of the building and asked what had happened and everyone looked at me kind of wild and didn't say anything. The first person I saw that I recognized was Mrs. Kate Harvey. She looked at me and I asked her what was the matter, she didn't answer me, and then I met Mrs. Ross just by the side of the elevator and she said: 'Oh, Mrs. Petrie, that screen.' I knew then that something had happened to my boy."

About the time the Petries moved into apartment No. 36, they rented the room with

the defective screen and another room to two young ladies, without the knowledge or consent of appellants, but they retained the general control over the rooms, with the right to enter them at their pleasure for the purpose of cleaning them, and without severing them from the apartment. The contract with the young ladies was by the month, and the room with the defective screen was so occupied at the time appellee fell from the window. The doors to these rooms were not kept locked by the young ladies, and there was nothing to keep appellee from entering the rooms. The rooms remained an integral part of the apartment during all the time the young ladies occupied them.

We give the following additional quotation from the testimony of Mrs. Petrie:

"When I left that morning to go to work, with the knowledge that my maid had not come, I did not go to look to see if the screen had been repaired. I didn't look to see if it had been repaired because Mrs. Ross had promised me only a few days before that she would send up and have it fixed immediately and I relied on her promise. I relied upon that promise because she told me that she would have it attended to and fixed immediately. I have testified about two promises with reference to that screen; the first one at the time I interviewed Mrs. Ross with a view of becoming a tenant in that apartment, and the next one just a few days before this accident. There had elapsed between the time that I saw the first promise was made and the day that I discovered that the repairs had not been made on the screen, according to my testimony, about 45 days, but my son had not been here during that entire 45 days; he was not with me during the entire time. I had had that promise for 45 days and it was not complied with. My son had only been with me a short time before he was hurt."

### Opinion.

On the foregoing facts, we announce the following conclusions:

[1] (1) The promise of appellants to make the repairs in apartment No. 36, including the repair of the defective window screen, was on a valuable consideration. Whether we treat the agreement by which the Petries took over the apartment as an assignment of the Gimble lease or as a new lease between them and appellants, a new consideration entered into the contract. Appellants secured the additional liability of the Petries as security for the rent, and required that they buy the Gimble furniture at an expenditure of $500. These obligations were assumed by the Petries only on condition that the appellants make the repairs. But for such promise they would not have become tenants of appellants, would not have bought the furniture, nor assumed the monthly rental of $90. True, the promise to make the repairs was not a part of the Gimble lease, but as that contract was not

within the statute of frauds, it was subject to modification by the subsequent parol agreement, and, when this was done, the contract "consisted as a whole" of the original agreement, together with the oral modifications." 25 R. C. L. 708, § 352.

[2] (2) The hazard to appellee would have been materially lessened had appellants performed their contractual duty to him by repairing the defective screen. While it is true that the screens on the other windows were of a nature easily operated, and appellee could have operated them and could have fallen out of any of the other windows —the fact is he did not do so. Under his statement, he would not have done so, nor would he have fallen out had the screen on the particular window been repaired. He was an intelligent child 7 years old, and in our judgment the inherent caution in a child of his age, on the facts of this case, was sufficient to raise an issue in his favor that he would not have loosened the fastenings on a window in this apartment and negligently leaned his body against it. This point is presented by appellants under what they designate "a practical view of the case." They say:

"From a practical standpoint, the case at bar seems utterly groundless for the further reason that there was practically as much danger of the child falling from any of the other windows, without reference to the state of repair or disrepair of the screen catches, as from this particular window with the supposedly defective screen catches."

We cannot agree with appellants on their construction of the facts of this case.

[3] (3) We must sustain the jury's finding to the effect that the parents of appellee did not know of the continuing defect in the screen. They discovered that the screen had not been repaired some six or eight days before the accident, and testified that they thought it had been repaired. The jury was the judge of their credibility.

[4] (4) The renting by the Petries of the room with the defective screen was not a breach of their contract with appellants. "Letting lodging is not a breach of a contract not to underlet the premises or any part thereof." 24 Cyc. 969n.

In Mullins v. Nordlow, 170 Ky. 169, 185 S. W. 825, it was held, although a lease declared that the demised premises should be used for family purposes only, and should not be sublet, the lessee might rent rooms where no portion of the premises was sublet, and the lessee retained control.

In Peaks v. Cobb, 197 Mass. 554, 83 N. E. 1106, it was held that permitting another to occupy a room at a fixed price per week did not violate a contract not to "lease, underlet, nor permit any other person or persons to occupy or improve" the premises.

This proposition is sustained by Leduke v. Barnett, 47 Mich. 158, 10 N. W. 182; Presby

v. Benjamin, 169 N. Y. 377, 62 N. E. 430, 57 L. R. A. 317; Spencer v. Com. Co., 30 Wash. 520, 71 Pac. 53.

But, if such renting was in violation of the contract between the Petries and appellants, and was negligence on the part of the Petries, appellants did not ask that such issue be submitted to the jury as a proximate cause of appellee's injury; nor was any issue asked as to whether it increased the risk of appellee from the defective window screen.

[5] (5) The negligence of the Petries, if any, in not repairing the screen and in not discovering that it was not repaired prior to appellee's injury, and in leaving him in the room on the morning of the 15th of August, and in renting the rooms to the young ladies, was not, as a matter of law, the sole proximate cause of appellee's injures. The jury found that the negligence of appellants was a proximate cause, and we believe that finding is fully sustained.

[6] The negligence of the Petries was only a concurring cause of appellee's injuries. Appellants' negligence was continuing from the inception of the contract, and was operative at the time of the injury. Clearly, without their negligence, the issue was raised that appellee would not have fallen out of the window. If the father and mother of appellee were guilty of negligence, it would not affect his right to recover, in view of the continuing negligence of appellants. Grand Trunk Railway Co. v. Cummings, 106 U. S. 700, 1 Sup. Ct. 493, 27 L. Ed. 266; G. C. & S. F. Railway Co. v. McGowan, 73 Tex. 357, 11 S. W. 336; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Western Union Tel. Co. v. Huffman, 80 Tex. 420, 15 S. W. 1048, 26 Am. St. Rep. 759.

[7] (6) When the contract between appellants and the Petries was duly executed, appellee, in whose interest the contract to repair the window was made, was entitled to a substantial performance and execution of that obligation. Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063; Hill v. Hoeldtke, 104 Tex. 600, 142 S. W. 871, 40 L. R. A. (N. S.) 672; American National Bank of Houston v. American Loan & Mortgage Co. (Tex. Com. App.) 228 S. W. 169.

[8] The continuing negligence on the part of his parents to make the repair does not, as a matter of law, affect his right under said contract, unless such negligence constituted the sole proximate cause of his injuries. This was a question for the jury, and was decided by them against appellants' contention.

[9] (7) In this case appellants, for a valuable consideration, promised to make specific repairs. They would distinguish such a promise from one "to keep demised premises in repair." In our judgment no such distinction can be based on sound legal prin-

ciples. Negligence can only give rise to a cause of action when its consequences should have been anticipated. When that issue arises and is found in plaintiff's favor, whether on specific facts or a general condition, he is given a recovery.

(8) This brings us to the great question in this case. Appellants' first proposition is as follows:

"In the absence of well-recognized exceptions to the general rule (none of which appear in this case), a landlord owes no duty of care for the safety of a member of a tenant's family with respect to the condition of demised premises; and this is true, notwithstanding the landlord may have agreed with the tenant, for a valid consideration, to make certain specific repairs."

Though appellants' proposition is sustained by the weight of authority, we do not accept it as sound, nor as being sustained by the trend of the decisions of this state, but believe that appellee has correctly stated the law in his counterproposition, which is as follows:

"We maintain it to be clear in principle, sustained by the best-considered cases, and supported by the decisions in Texas, that where the landlords as here, as a part of the contract of tenancy, stipulate for repair, not for comfort and convenience only, but for reasonable safety to avert a condition of danger, and fail to make the repair through negligence which is the proximate cause of injury to the tenants' infant child, the landlords have breached their duty and are liable for the injury, especially where safety of the child was within the mutual contemplation of the parties as a purpose for which the promise of repair was required and made."

In Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620, our Supreme Court said:

"It is well settled that the owner of leased premises is liable to the public or to third persons for injuries resulting from a defective structure on the premises, when the defect existed at the time the lease was made, or when he had covenanted to repair and keep in repair."

While this proposition was not necessary for a decision of that case, yet it was a clear announcement by the court of its conclusions on a very much confused point of law.

Again, in O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628, the appellants submitted the following propositions:

"1. The occupant is prima facie liable to third persons for damages accruing to them from defects in the leased premises.

"2. To the general rule above stated there are two exceptions: (1) Where the landlord has, by express agreement between the tenant and himself, agreed to keep the premises in repair; (2) where the premises are let with a nuisance upon them, by means of which the injury complained of is received."

Discussing these propositions, the court said:

"The rule * * * is well settled that the tenant, subject to the exceptions mentioned in the second proposition, is bound to repair the premises leased to him."

Tiffany's Landlord and Tenant, vol. 1, p. 596, announces the following proposition:

"No distinction can, it is conceived, be taken between the case of injury to the person of a tenant or one of his family, and injury to his chattels on the premises, and these cases may be considered as equivalent to decisions that he would be liable for such personal injuries as result from his failure to perform his contract."

In Sanger v. Smith (Tex. Civ. App.) 135 S. W. 189 (writ of error refused), recovery was allowed the tenant against his landlord for negligently failing to make promised repairs in a leaky roof.

In Lovejoy v. Townsend, 25 Tex. Civ. App. 385, 61 S. W. 331, Mr. Chief Justice James, speaking for the court, said:

"We have the court's finding that by the terms of the lease the landlord expressly contracted to repair and keep the roof in repair. This obligated him to put it in repair, if unsafe, when the lease was entered into, and if he was negligent in this, as the court has found he was, he is liable."

The latest expression of our courts on this question is in Pollack v. Perry (Tex. Civ. App.) 217 S. W. 967. In that case, Judge Talbot said:

"There is quite a contrariety of opinions upon the most, if not all, of the questions presented in this appeal, and a reading of them tends rather to confuse than to enlighten. It is well settled at common law, however, that the landlord is under no obligation, in the absence of a covenant to that effect, to repair the demised premises, even when they become defective through decay or deterioration, and the greater number of decided cases support the view that a landlord's covenant to repair will not support an action for personal injuries due to failure to make such repairs, since those injuries are deemed too remote to have been in contemplation of the parties when the covenant was given. It is said that, in accordance with this view, it is essential, in order to recover damages for personal injuries, that some act of negligence or misfeasance on the part of the landlord beyond the mere breach of covenant be shown. Likewise, the weight of authority is to the effect that for a breach of his covenant to repair the leased premises, possession of which is in the tenant, the landlord cannot be held in tort for personal injuries received by the tenant as the result of the defect in the premises; that is to say, an action in tort cannot be based upon a breach of the contract itself. This is so because it is a cardinal principle of law that a mere breach of contract does not, in and of itself, constitute a tort. But while the general rule, which has been denied in some cases, is that an action ex delicto cannot be maintained to recover damages based upon a landlord's breach of covenant to repair, where the damages claimed are for personal injuries due to defects in the demised premises, when the landlord had agreed to repair yet it has been held, which is in accord with our views, that an action will lie to recover for such injuries where based upon the negligent failure of the landlord to make repairs according to his contract. In such case, the right of recovery does not depend or rest upon the breach of the covenant to repair, but upon the negligent failure of the landlord to perform a duty which he owes to his tenant amounting to a tort, and rendering him liable for injuries resulting therefrom. His liability does not rest upon contract, but upon negligence, the contract to repair being a mere matter of inducement, from which arises his affirmative duty to exercise care as to the condition of the leased premises, and, if his negligence in making or failing to make repairs results in an unsafe condition of the premises, he is liable for injuries caused thereby, unless the party injured was guilty of contributory negligence."

In that case a writ of error was granted, but the Commission of Appeals, 235 S. W. 541, decided the case on the issue of contributory negligence, expressly reserving this question.

Other cases in support of appellee's counter proposition are thus reviewed by him:

"We oppose the nonliability theory, not only with the Texas authorities cited, but with the eminent opinions of the distinguished authors, Judge Thompson, Commentaries on the Law of Negligence (2d Ed.) vol. 1, § 1141, and Shearman & Redfield, Negligence, vol. 3, § 708a, and with the well-considered opinions in Smith v. Preson (Me.) 71 Atl. 653, 656, where the recovery was to a tenant for injury to his chattels from defect in the gutter which the landlord had agreed to repair; Good v. Von Hemert (Minn.) 131 N. W. 446, where the recovery was against the landlord for personal injury arising from the neglect of the landlord to repair the porch railing which he had agreed to repair; Lowe v. O'Brien (Wash.) 138 Pac. 295, where the damages resulted to the tenant from the neglect of the landlord to keep his promise to repair the premises; Barron v. Liedloff (Minn.) 104 N. W. 289, where there was a recovery in favor of a sublessee for injury from a defective porch which the landlord had neglected to remedy pursuant to his promise of repair; Schoppel v. Daly (La.) 36 So. 322, where recovery was for personal injury to wife of the tenant by falling through a bad floor which the landlord had promised to repair but had neglected to do, the court classifying the action as 'one ex delicto for personal injuries to the wife,' and adding, 'torts are often connected with or founded on contracts'; Thompson v. Clemons (Md.) 53 Atl. 919, 60 L. R. A. 580, which was a case by a tenant against the landlord to recover for personal injuries due to the neglect of the landlord to repair a porch which he had promised to repair, the court holding that liability would not exist upon the mere contract without negligence, but adding, 'if the appellee (the landlord) knew of the defect in this porch that caused the injuries, and

had reason to believe that it was likely to produce such results if not repaired then it was negligence on his part, in view of his agreement to repair, not to do so promptly or at least to take some steps to protect the tenant and his family from injury'; Pinkerton v. Slocomb, 126 Md. 665, 95 Atl. 965, affirming the preceding case; Robinson v. Heil (Md.) 98 Atl. 195, where the injury was to the tenant's 12 year old child, on account of defective steps which the landlord had promised to repair, but had neglected to do, and where liability was held, the court declaring the doctrine of liability to be firmly established in that state, and confirming the two preceding cases; Hart v. Coleman (Ala.) 78 So. 201, L. R. A. 1918E, 213, where the court held to liability of the landlord for personal injury to the tenant from breaking through a defective porch floor which the landlord had promised to repair, holding that where, as there, the disrepair was likely to cause injury to the tenant, so that injury must have been within the mutual contemplation of the parties when the agreement to repair was made, the recovery could even be ex contractu, the court saying, "A landlord who breaches his contract to repair a particular defect which is likely to cause injury to the tenant, is liable ex contractu for personal injuries suffered by the tenant because of such breach; Culber v. Hill, 68 Ala. 66, emphasizing the fact that the tenant, where the landlord has promised to repair, has the right to repose on such promise; Merchants' Cotton Press & Storage Co. v. Miller (Tenn.) 186 S. W. 87, holding to liability for neglect of the landlord in breach of his agreement to keep the premises in repair after notice of the defect, the court referring to the authorities holding to nonliability as having adopted 'legal fictions' to sustain their view, and observing, 'More may be said of the logical exactness of this doctrine than its inherent justice,' and adding, 'We believe these courts (the ones holding to liability) announce the better, and what will develop into the prevailing doctrine when and as applied to members of the tenant's family or to those in his employ in the use of the premises'; Mesher v. Osborne (Wash.) 134 Pac. 1092, 48 L. R. A. (N. S.) 917, in which liability was adjudged to a father for the death of his child, whose mother was a guest of the tenant, to whom the landlord had promised repair, but had neglected to remedy the disrepair, resulting in the death of the child, the court holding the liability to extend, not only to the tenant and his family, but to his guests as well, and approves the section 708a we have cited from 3 Shearman & Redfield's Negligence (6th Ed.), saying of it, 'A carefully compiled and discriminating text, after noting the hopeless conflict of the authorities and the hair-splitting distinctions indulged by some' (page 923); Petten v. Bartlett (Me.) 89 Atl. 375, 49 L. R. A. (N. S.) 1120, holding to liability where the injury was to a tenant's invitee, from a disrepair which the landlord had promised to repair, but had neglected to do so; Graff v. Lemp Brewing Co. (Mo.) 109 S. W. 1044, holding to liability for personal injuries to the tenant from a defective floor due to neglect of the landlord to make repairs which he had agreed to make as a part of the contract of letting; Moore v. Steljes, 69 Fed. 518, where the injury was to the tenant's infant child from the fall of the ceiling, where the landlord had warranted the safety, the court holding, 'The gist of the action is this continuing negligence'; Sontag v. O'Hara, 73 Ill. App. 432, where liability was held against a landlord for the death of a tenant due to the neglect of the landlord to make a repair which he had promised to make."

[10] It is elementary, under the decisions of this state, that in cases ex contractu "recovery can be had for all compensatory damage that may fairly be said to have been within the contemplation of the parties at the time of making the contract, as probable from its breach." In cases ex delicto, in order to afford the basis for a cause of action, "the injury must be the natural and probable result of the negligent act or omission." Railway Co. v. Bigham, 90 Tex. 225, 38 S. W. 162. In neither instance is recovery allowed for injuries resulting from "remote causes." Now in this case, the very purpose of the Petries in contracting to have the screen repaired was the prevention of danger to appellee. Appellants undertook to repair the screen primarily for the benefit and protection of appellee. Both parties understood the purpose of the contract and the probable consequences of its breach or of a negligent failure to execute it. This issue must arise from the first words spoken to Mrs. Petrie, by Mrs. Ross, after appellee was injured: "Oh, Mrs. Petrie, that screen."

It does not seem to us that the injury to appellee was "remote," whether we view his cause of action as one ex contractu or ex delicto. The screen in disrepair was a menace to appellee's safety. Appellants contracted, for a valuable consideration, to make the repair for his benefit. The father and mother relied on the promise of appellants to make the repair—a promise never repudiated by them, but acknowledged and renewed only a few days before the accident. Whatever technical term may be used to describe appellee's cause of action, we believe these facts afford a basis for negligence arising out of the contract, and that we are justified, notwithstanding the great authority cited by appellants (it seems that all American authorities are cited in annotations to Hart v. Coleman, 201 Ala. 345, 78 South. 201, L. R. A. 1918E, 213), in refusing to approve their proposition No. 1 as a correct statement of the law.

[11] (9) Appellants complain of the admission of testimony as to the sale by the Gimbles of their furniture to the Petries, their proposition being:

"As a matter of law, the purchase by the Petries of such furniture from the Gimbles could not be deemed a consideration moving to and binding Mrs. Ross, or the Ross properties represented by her in the transaction."

No error was committed in the admission of this testimony. Appellants made the purchase of this furniture by the Petries from

the Gimbles a condition of their contract, and would not agree to take the Petries as tenants unless they bought the furniture. To constitute a valuable consideration "it is not necessary that a benefit should accrue to the person making the promise; it is sufficient that something valuable flows from the person to whom it is made, or that he suffers some prejudice or inconvenience, and that the promise is the inducement of the transaction." 9 Cyc. 311. The finding of the jury that the agreement of tenancy did not apply unless the Petries bought the Gimble furniture is supported by the evidence.

(10) The court did not err in refusing to charge the jury that the Petries' failure to repair the screen constituted an intervening agency breaking the chain of casual connection between the negligence of appellants and appellee's injury. As we have heretofore said, the negligence of the Petries was only a concurring cause with that of appellants. The Petries were never notified by appellants that the repair of the screen rested with them. No fact came to them which, as a matter of law, constituted notice that appellants probably would not repair the screen.

[12] (11) The court did not err in refusing the following special charge requested by appellants:

"Gentlemen of the jury: You will not allow any damages as for any condition due to tuberculosis, since the testimony clearly indicates that it is speculative whether or not the tubercular condition can be attributed to any injury sustained by the plaintiff in the fall in question."

The refusal of this charge was not error. The testimony of expert physicians in this case clearly made such issue one of fact. Dr. Hamilton testified:

"It is assumed that about 90 per cent. of human beings have tuberculosis at some time in their existence. It is very evident that without anything to excite the tubercular germ, any injury or anything of that kind, that the germ would lie dormant because only about 15 per cent. of the people die of tuberculosis. There are several conditions that are looked upon as exciting causes. Bad health is one of the conditions, unsanitary surroundings and trauma has been considered as one of the exciting conditions in a bone; that is, an injury to a bone reduces the resistance in that bone, and, if a child or person has tubercular germs, those germs would locate in this traumatized area.

"If this child sustained his injuries in falling from a third story window, striking upon structures intervening between the window and the pavement and then falling upon the pavement, the injury sustained in that manner, I could understand, how they could have been the cause of lighting into flame these tubercular germs and causing the tuberculosis of the bone that I found—I could understand how one receiving a trauma in that way and who had

tubercular germs—that such a condition would be brought about and complete the process."

[13] As we understand the law, the court did not violate the rules of evidence, but ruled consistently therewith, in permitting Dr. Hamilton to give the above testimony, and his testimony, to the effect that the tubercular condition of appellee might have resulted from his injuries, raised such issue, and it would have been error for the court to give the requested charge. Railway v. Grenig (Tex. Civ. App.) 142 S. W. 139; Railway v. Abbott (Tex. Civ. App.) 146 S. W. 1081.

[14] (12) The verdict of the jury was not excessive. As a result of his injuries, appellee is a hopeless cripple, and has suffered, and will probably continue to suffer, great pain as long as he lives.

We believe the judgment of the trial court should be affirmed, and it is accordingly so ordered.