## PLATT v. BIG FOUR ICE & COLD STORAGE CO. et al.

### No. 1156.

Court of Civil Appeals of Texas. Waco.

March 17, 1932.

Rehearing Denied April 7, 1932.

Jos. W. Hale and Geo. Clark, both of Waco, for appellant.

Witt, Terrell & Witt, of Waco, for appellees.

ALEXANDER, J.

D. A. Platt brought this suit against E. C. Baughn, the Geyser Ice Company, the Big Four Ice & Cold Storage Company, and others to recover damages for personal injuries. The two named ice companies jointly maintained an ice wharf in East Waco where ice was sold and delivered to customers to be carried away by them. Baughn drove his automobile up to the wharf and purchased one hundred pounds of ice. The agent of the ice companies, who will hereafter be referred to as the agent, in keeping with the custom, placed the one hundred pound block of ice on the running board of the car, and tied it to the knob on the door of the car. Baughn drove away, and, while proceeding along the road on the way to his home, the ice came untied and slipped or was thrown from the car. It skidded across the road and struck Platt, a pedestrian, and broke his leg. Platt sought to hold the ice companies liable for his damages. At the conclusion of the evidence, the court gave an instructed verdict for the defendants. The plaintiff appealed.

The appellant alleged that the agent negligently failed to properly tie the ice to the car, and that such failure was a proximate cause of the injury. The ice companies contend, among other defenses, that there was no act of negligence on the part of the agent. Whether or not such agent was negligent depended on whether he failed to properly tie the ice, and whether he knew or by the exercise of ordinary care should have known that the ice would be thrown from the car and the injury to plaintiff or some similar injury inflicted as the result of his conduct.

The evidence shows that the ice companies had a custom of tying the ice to the purchaser's car when delivery was made by placing the ice on the running board thereof. One hundred pounds of ice is the largest block of ice sold at the wharf in question. The agent testified that prior to the occasion in question he had been told "to tie the ice on really good where it won't fall off—the more ice the more string to use." In describing how he usually tied a large piece of ice to the car, he said: "I would put it there (meaning on the running board) and go to the windshield post with the twine and wrap it around three or four times; from the windshield post to the ice again and then I go to the door handle, wrap it around three or four times on that real good and tie it. Then where they have a long ways to go, I put some other twine on it so it won't fall off. * * * I go about three or four times around the windshield support, then back to the ice and from the ice to the door and put it around there four—three or four times. * * * My reason for doing that is so it won't fall off and that's the only reason I have for doing it."

Baughn, the driver of the car, testified that the only place where the ice was tied was to the door, and that common binder twine was used. He further testified that, when the ice fell off, the string did not break, but came untied. The agent further testified: "If I tied it one time to the door I should have put more string on it."

We think this evidence raised a question of fact for the jury as to whether the ice was properly tied to the car.

Did the agent know, or by the exercise of ordinary care should he have known, of the danger of injuring plaintiff? The evidence shows that Baughn lived about four miles in the country. The agent knew this and knew the road over which he would travel in going home. The agent knew that it was necessary that the ice be tied securely. He testified: "I knew at that time that a one hundred pound block of ice is apt to fall from an au-

tomobile when it is being moved along the highway if it is not properly tied. * * * I knew on July 8, 1928, (the day of the accident) that it was imperative that the ice be carefully and securely tied to an automobile that was going out on the highway."

When Baughn drove up to the wharf to purchase the ice, he remained seated on the left side of the car at the steering wheel. His engine was running, and it was apparent to the agent that he would proceed along the street as soon as the ice was loaded. The ice was placed on the running board on the right side of the car out of Baughn's view. Baughn knew that the agent attempted to tie the ice, but he could not see the part of the car to which it was tied, nor how it was tied. From this we think the jury could have inferred that the agent should have known that Baughn did not know that the ice had not been properly tied; that Baughn was relying on him to see that the ice was loaded safely for traveling; that Baughn would proceed along the highway with the ice in the condition as left by the agent; that other people would be using the highway, as they had a right to do, and might be injured if the ice fell off the car; and that there would probably be some swerving and jolting of the car, and that the ice might be thrown therefrom unless properly tied. We think there was sufficient evidence from which the jury could have concluded that the agent knew, or by the exercise of ordinary care should have known, of the danger and should have foreseen that this or some similar injury would be inflicted. It was the agent's duty to so conduct his employer's business as not to knowingly and negligently endanger the person of another lawfully using the public streets and highways. 45 C. J. 645. The question of negligence was therefore for the jury.

The ice companies contend that the act of Baughn in driving down the road with the ice constituted the intervention of a new, independent, and responsible agent which broke the causal connection between the alleged negligence of their agent and the injury to the appellant, and that the negligence of such agent was not the proximate cause of the injury. It is true that the intervention of Baughn's act in driving the car along the highway was necessary in order to inflict the injury upon Platt. In other words, if the car had remained standing where it was when the ice was loaded, the injury would not have occurred. However, the intervention of a new agency between the negligent act of the agent and the injury to appellant did not necessarily break the causal connection. G. C. & S. F. Ry. Co. v. McWhirter, 77 Tex. 356, 14 S. W. 27, 19 Am. St. Rep. 755; Mexican National Ry. Co. v. Mussette, 86 Tex. 708, 26 S. W. 1075, 24 L. R. A. 642; Gonzales v. Gal-

veston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; G. C. & S. F. Ry. Co. v. Ballew (Tex. Civ. App.) 39 S.W.(2d) 180 (writ ref.); O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628; Shippers Compress & Warehouse Co. v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032 (writ ref.); City of Waco v. Branch (Tex. Civ. App.) 8 S.W.(2d) 271 (writ ref.). In determining whether or not the act of the agent in failing to properly tie the ice was a proximate cause of the injury, the test is: Did the negligence of such agent play an appreciable part in bringing about the injury to the appellant? To illustrate: If the ice would have been thrown from the car and the appellant injured had the ice been properly anchored, or if the throwing of the ice from the car was due solely to the negligence of Baughn in driving the car at a rapid rate of speed over rough roads, or in suddenly swerving the car, or to other causes and not due in a substantial part to the fact that the ice was not properly tied, then the negligence of such agent was not a proximate cause of the injury. On the other hand, if the ice would not have fallen from the car had it been properly anchored, and the failure to properly anchor same contributed a substantial part in allowing it to fall, then the failure to properly tie the ice was a proximate cause of the injury.

We are unable to say as a matter of law whether the ice was caused to fall and strike plaintiff as the result of the failure of the agent to properly tie same, or whether this was due to other causes wholly disconnected therewith. This was a question of fact for the jury, and the trial court should not have given a peremptory instruction.

The judgment of the trial court is reversed, and the cause remanded for a new trial.